**Richard PASS, Robert Dillard and Mrs. Robert Dillard, Appellants,**

v.

**The FIRESTONE TIRE & RUBBER COMPANY, Appellee.**

No. 16365.

United States Court of Appeals
Fifth Circuit.

April 3, 1957.

Rehearing Denied May 3, 1957.

James Maddox, Rome, Ga., Isaac C. Adams, Dalton, Ga., Ronald F. Chance, Calhoun, Ga., for appellants.

John W. Maddox, Rome, Ga., James Beverly Langford, Calhoun, Ga., Oscar M. Smith, Rome, Ga., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

Each of the appellants filed a separate action against the appellee arising out of the "explosion" of a tubeless automobile tire. The three cases were consolidated for trial. Mrs. Dillard's action was for loss of her conjugal rights as a result of the injuries sustained by her husband. Dillard owned and operated an automobile service station in Calhoun, Georgia, and Pass was his part time employee.

Dillard and Pass were engaged in putting a Firestone tubeless tire upon the rim of a wheel of an automobile belonging to one of Dillard's customers, who had purchased the tire from Dillard. The tire was what is known as a "change over," meaning that it had been mounted on another rim but had received very little use. One of the witnesses estimated that it had been used probably about a hundred miles.

The tire had been placed on the rim, and Dillard had put enough air in it to hold it in place, when another matter required his attention and he dropped the

air hose and turned to give instructions to another employee. Pass picked up the air hose, and Dillard testified that he "presumed," but did not know, that Pass was putting air in the tire. A bystander, Howell Cochran, testified that he saw Pass pick up the air hose, and continued:

"Q. Now, then, what did you see him do with it? A. I thought he stuck it on the tube.

"Q. Yes, sir. Did it appear to you that he did? A. Well, I thought he did.

"Q. And is that your best opinion on it? A. That's right.

"Q. Now, do you know whether or not he put any air in there? A. I would take that he did."

On cross-examination, Cochran testified:

"Q. Mr. Cochran, you are not testifying to this jury that you know of your own knowledge that there was air applied on that occasion by Richard Pass, are you? A. I said that I thought that he was putting air in it.

"Q. I see. A. I didn't, didn't state that he was."

Pass testified that he did not apply any air to the tire but picked up the air hose to hand it to Dillard. In any event, the tire "exploded"[1] and Dillard and Pass were seriously and permanently injured.

The appellee was the manufacturer of the tire, and was charged with negligence in its manufacture. It denied the charge of negligence, and pleaded contributory negligence on the part of Dillard and Pass.

The rim upon which a tubeless tire is mounted has a "drop center," that is, it is roughly in the shape of a V with a slight hump on either side. No valve stem is attached to the tire itself, but air is inserted through a valve stem in the rim. The compressed air is contained within the rim and the tire. Inside the two circular edges of the tire which fit against the rim are located built-up hoops consisting of steel wire, rubber and fabric called the tire beads. The explosion of this tire from the rim occurred at a weak spot in the bead, where the bead wires, some twenty in number, either were already broken or broke at the time of the explosion.

The expert testimony on the part of the plaintiffs tended to prove that the breaks in the bead wire came about from kinks in the wire, which in turn caused "fatigue" breaks, and which resulted from negligence in the manufacture of the tire. The defendant offered evidence tending to prove that its bead wire was subject to rigid specifications, furnished by competent companies and carefully inspected, and traced the processes of manufacture and the numerous tests to which its tires were subjected.[2]

The trial, presided over by a learned and patient district judge, was skillfully conducted by able counsel for each of the parties. It extended from Monday morning until the following Saturday afternoon when the jury returned in each case a verdict for the defendant. The appellants urge as errors committed in the trial certain rulings of the district court in the admission of evidence, in charging the jury, and in refusing certain instructions requested by the plaintiffs.

■ The witness Sam Hoffman was Technical Manager of defendant's Tire Division. He was duly qualified as an expert in tire engineering, manufacturing and behavior, as well as in the methods of mounting and dismounting tubeless tires. He testified that the printed instructions of the Company were never to use more than fifty pounds of air pres-

1. The tire was not blown to bits, but the tire and the rim separated violently with a noise like an explosion. To a visual examination, the tire appeared new even after the explosion, but a careful manual inspection disclosed a flexible weak spot in the "bead" of the tire.

2. The defendant had manufactured and sold some 26½ million tubeless tires since they were first put on the market in the fall of 1951.

sure in mounting a tubeless tire; that the beads will generally seat in place at between thirty and thirty-five pounds pressure per square inch; that it is possible for the wires in a tire bead to be broken if more than fifty pounds per square inch pressure is used. From his examination of the tire in question, he stated his opinion that the wires had been broken by tension and not by fatigue; and further stated, that if the bead wire on the tire had been normal at the beginning of the mounting operation and a tension break did occur, it could only occur at pressures above fifty pounds per square inch air pressure; that "In my opinion this tire could not have broken under any circumstances at ten pounds per square inch of air pressure."[3] The defendant's counsel asked the witness the following question: "Q. Mr. Hoffman, if additional air had been added to the tire after the bead had sealed, what, in your opinion, caused the explosion?" The plaintiffs objected on the ground that the question was hypothetical and was based upon facts that were not shown by the record. In overruling the objection, the court stated:

"I will allow the question. I agree that there is no direct testimony to that effect, but you have here the testimony of witnesses to the effect that they saw Pass put the end of the hose to the valve and they thought that he appeared to be putting air in the tire. Connected with the testimony of the other witnesses, that the explosion could not and would not have occurred with only that amount of air in it, those circumstances, I think, would justify the question. If the jury should find that those circumstances indicated that air had been added, then that would form the basis for this question. I will allow it."[4]

█ The witness Hoffman's answer to the question was as follows:

"In my experience, additional air after the bead had sealed would cause a tire bead breakage under tensile if mismounting procedures were followed. That is, if the air pressure exceeded fifty pounds per square inch. That would be due to a concentration of stresses at its hung up portion of the bead and the bead would break there due to those concentrations of stresses."

The plaintiffs further moved to exclude the answer because it assumed that the tire bead was hung up, whereas there was no testimony to that effect. There was no positive testimony that the tire bead was "hung up," and in the nature of things there probably could be no such testimony for the tire bead was concealed by the rim during the mounting operation. Hoffman's previous testimony, however, has shown that that is the point in the mounting operation at which the greatest stress is imposed upon the tire bead.[5]

3. The plaintiff Dillard had testified that he had not put enough air in the tire for it to register on the tire gauge, or not as much as ten pounds pressure of air.

4. In its final instructions to the jury, the court charged them that, "The opinion testimony of an expert can be based upon hypothetical questions, or based upon observations of the expert. However, you should not consider any opinion at all unless the facts upon which it is based are found by you to be true and correct."

5. "Q. In that mounting operation which you have described, is there some one point in the tire bead that takes the greatest stress? A. If the bead wire hoop, which has a start and a finish, happens to fall across this part, it is, it forms a discontinuous, it forms a break in the continuity of the bead, and it is more apt to break than a portion where you will have a continuous sequence.

"Q. Now, as that final bead goes over, or attempts to go over the hump in the mounting process, what happens to that arc of your bead wire? Is it, does it gradually seat and go over? A. It gradually shortens until it finally reaches the desired diameter over the hump.

"Q. And what effect does that shortening of the arc have on the stresses and forces that are placed on the bead wire at that point? A. The stresses placed on the bead wire are a combination of

The jury had a right to believe the testimony of the witness Hoffman, that the explosion simply could not have occurred under an air pressure of ten pounds or less. Nor were they bound to believe the testimony of Pass, that he did not put more air in the tire, in the face of Cochran's testimony, that he thought Pass did put more air in the tire. It was not essential that Cochran's observation be positive or such as to permit him to testify with absolute certainty. See 2 Wigmore on Evidence, 3rd ed., Section 658.

Georgia Code, § 38–1710, provides as follows:

"Experts; opinions admissible, when.—The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."

In Western & A. R. R. v. Fowler, 77 Ga. App. 206, 47 S.E.2d 874, 888, a retired railroad engineer was permitted to express his opinion as an expert as to what would tend to cause a derailment, where his opinion was based, in part at least, on facts supported by testimony of other witnesses. Even a nonexpert has been permitted to testify that a wound caused death in his opinion, and to give his opinion with the reasons therefor that the deceased could not have inflicted the wound himself. Tanner v. State, 163 Ga. 121, 135 S.E. 917, 920. In the course of its opinion in that case, the court said: "A witness may give an opinion as to the cause of an accident, provided the opinion be accompanied by the reasons upon which it is based." See also Swift & Co. v. Morgan & Sturdevant, 5 Cir., 214 F.2d 115, 119.

The appellants insist upon the application of certain rules peculiar to the State of Georgia describing the relative weight to be attached to positive evidence as opposed to negative evidence and to circumstantial evidence as opposed to direct evidence. To illustrate their contention we quote from the brief of the appellant Pass:

"There was no positive evidence that either Pass or Dillard applied any more air after the tire was tested as aforesaid, and it is respectfully insisted positive testimony overrides negative testimony. Georgia Code, § 38–111. Positive and Negative testimony.

" 'The existence of a fact testified to by one positive witness is to be believed, rather than that such fact did not exist because many witnesses who had the same opportunity of observation swear that they did not see or know of its having existed. This rule shall not apply, when, two parties having equal facilities for seeing or hearing a thing, one swears that it occurred and that other that it did not.'

"Where negative evidence or circumstantial evidence is in direct conflict with positive, uncontradicted evidence, the former, as a matter of law, cannot be considered as evidence in conflict with the positive evidence.

stresses. The combination of tension, tortion and bending. It is a combined stress, and it imposes a load on the bead which is much greater than the load imposed in the actual tire service.

"Q. I will ask you whether or not that concentration of stresses is going on all over the bead wire, or at one particular point? A. With that, with adequate lubrication it tends to distribute it, although I feel sure there does tend to be a, some concentration of stress at that point.

"Q. Yes, sir, and if it hangs up, as it has in that illustration there, with only one point remaining not over the bead as illustrated here, where is the greatest strain on the bead wire? A. It tends to be in the center of this arc.

"Q. Yes, sir, and illustrate on your other diagram. A. That would be—

"Q. Number Five. A. —the low point here.

"Q. Yes, sir. A. Of course, if the place would be at this point, then it would tend to be more, the more critical point.

"Q. Yes, sir. Now, does that happen in the mounting of the tire? A. It does."

"Seaboard Air-Line Railway v. Jarrell, 145 Ga. 688(1), 89 S.E. 718.

"Savannah & Northwestern Railway v. Gnann, 21 Ga.App. 671, 94 S.E. 914."

We are by no means certain that the two cases cited sustain the proposition of law last stated in the brief. Both cases are grounded upon an earlier Georgia case, Gainsville, J. & S. R. Co. v. Edmondson, 101 Ga. 747, 29 S.E. 213, which seems to us to announce no such doctrine.

Assuming arguendo, however, that the Georgia rules of law are as stated in the quotation from the brief of appellant Pass, supra, we do not consider either of such rules applicable to the trial of a case in the federal court. Neither is a substantive rule of statute or of common law by which the power of a federal court is restricted under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. To the contrary, such rules, if permitted, would limit and prescribe the very mode of thinking to be observed by court and jury. The duty and responsibility of the federal courts to exercise their constitutional and essential function of administering justice cannot be thus curbed by any power, state or federal. What we have just said in a case coming from Florida is pertinent here:

"The kind of jury trial to which the parties are entitled in Federal courts under Rules 38 and 39 of the Federal Rules of Civil Procedure 28 U.S.C.A. is that preserved by the Seventh Amendment to the Constitution, to which the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is of course subservient. Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303, 305; Reuter v. Eastern Air Lines, 5 Cir., 226 F. 2d 443, 445; Reynolds v. Pegler, 2d Cir., 223 F.2d 429, 433, 434."

Pogue v. Great Atlantic & Pacific Tea Company, 5 Cir., 242 F.2d 575, 582. The district court properly admitted the opinion of the witness Hoffman for such weight as the jury might, in its discretion, accord it.

The witness Passolt, who qualified as an expert metallurgist, testified concerning the difference in the appearance of the ends of wires which have been cut, which have been broken due to tension, and which have been broken due to fatigue, and illustrated his testimony with a slide containing three wires showing an example of each type break, which he projected on a screen and explained. The plaintiffs objected to the introduction of the slide itself upon the ground that "it would be carrying testimony of the witness into the jury room for what he testified in this connection and was merely used to illustrate his testimony and couldn't be admissible." The court overruled the objection, stating, "I believe this was an example that he exhibited on a slide on the screen to show the various types of breaks. It was merely an illustration of it." In support of their objection, the appellants rely upon the case of Royals v. State, 208 Ga. 78, 65 S.E.2d 158. The appellee cites in support of the court's ruling the case of Lively v. Thompson, 88 Ga.App. 31, 33, 75 S.E.2d 846. Whatever may be the Georgia rule limiting matter which may be taken out by the jury when it retires to deliberate, we consider any such rule purely procedural and not binding upon a federal court, even in the trial of a diversity case; and we think that the district court did not abuse its discretion in this instance.

The plaintiffs separately objected to the parts of the charge of the court submitting to the jury the issues of contributory negligence of Pass and of Dillard. Pass was an employee of Dillard and his negligence, if any, would be imputable to Dillard. As has been heretofore indicated, our reading of the record convinces us that there was positive testimony, as well as circumstantial evidence, from which the jury could have found both Pass and Dillard guilty of contributory negligence. It follows that

the court did not err in submitting that issue to the jury as to each of the plaintiffs.

■ The plaintiffs objected to the following portion of the court's charge to the jury:

"Now if Firestone was not negligent and did exercise ordinary care, and any defect got into the tire while in its control, notwithstanding ordinary care, that would be what the law designates as an unavoidable accident, for the occurrence of which the Firestone would not be liable."

It seems to us that that was a mere elaboration or additional statement of the issue that the defendant would not be liable unless guilty of negligence. See Savannah Electric Co. v. Jackson, 132 Ga. 559, 563, 64 S.E. 680, 682.

■ The plaintiffs objected to the refusal of the court to give requested charge No. 3, set out in the margin.[6] The second sentence of the charge imposed too strict a duty upon the defendant. Under Georgia law, the manufacturer is bound only to the exercise of ordinary care. Cole v. Pepsi-Cola Bottling Co., 65 Ga.App. 204, 15 S.E.2d 543; Armour & Company v. Miller, 39 Ga.App. 228, 147 S.E. 184; Slaughter v. Atlanta Coca-Cola Bottling Co., 48 Ga.App. 327, 172 S.E. 723.

■ In Simmons Co. v. Hardin, 75 Ga.App. 420, 43 S.E.2d 553, 557, 558, the Court of Appeals of Georgia quoted with approval from the Restatement of Torts as follows:

" 'The purpose which the article, if perfect, is intended to accomplish is immaterial. The important thing is the harm which it is likely to do if it is imperfect.' Restatement of the Law of Torts, § 395, p. 1074."

The appellants complain that the district court refused to give that statement in a written charge to the jury, to which refusal exception was duly reserved. The instructions given by the court cover clearly and exhaustively the duties owed by the defendant and the court was well within its discretion in refusing to charge further, as requested, on the ground that such charge would be argumentative and confusing to the jury rather than helpful. The Court of Appeals of Georgia has itself recognized that, "language employed by appellate courts in demonstrating the correctness of their rulings is often argumentative and otherwise objectionable as a charge to the jury." Atlantic Coast Line R. Co. v. Clements, 92 Ga.App. 451, 454, 88 S.E. 2d 809, 812; see also Atlanta & W. P. R. Co. v. Hudson, 123 Ga. 108, 51 S.E. 29, 30.

We find no reversible error in the record and the judgments are

Affirmed.

6. "A manufacturer, and in this case the Firestone Tire & Rubber Company, may be liable for an injury arising from a defect in a tire manufactured or processed by it, which it ought to have discovered, such as one which it could have ascertained by proper care or attention, or by making a reasonable test or inspection. Where the alleged defect causing the injury was in the construction of said tire, the manufacturer thereof being under a duty to furnish a safe, suitable and proper tire, such defective construction or processing was misfeasance on the part of the manufacturer, and it was ipso facto chargeable with knowledge of the defective condition. It was its duty to know whether the tire was constructed or processed defectively or not."