Wojciuk and another, Plaintiffs and Respondents, v. United States Rubber Company, Defendant: Phillips Petroleum Company, Defendant and Appellant.

*February 10—March 7, 1961.*

For the appellant there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Arthur Wickham* of counsel, all of Milwaukee, and oral argument by *Arthur Wickham.*

For the respondents there was a brief by *Foley, Sammond & Lardner* and *John R. Collins,* all of Milwaukee, and oral argument by *Mr. Collins.*

BROWN, J. The brief of the respondent plaintiffs contains an excellent summary of the facts which present the issues for present decision, as follows:

"Plaintiffs, husband and wife, have brought suit for personal injuries and related damages incurred when their automobile overturned due to an allegedly defective tire purchased by them some two weeks previously. They have sued the owner and operator of the Phillips "66" filling station from whom the tire was purchased (Herbert Stuewer, d/b/a Herb's Service); the Phillips Petroleum Company whose name and trade-mark appeared on the tire and in prominent places around the station premises; and United States Rubber Company, which actually manufactured the tire for Phillips.

"Each plaintiff alleges three causes of action against Mr. Stuewer, upon the respective grounds of (1) breach of express warranties; (2) breach of implied warranties; and (3) negligent representations concerning the tire and negligent inspection and installation of the tire. Two causes of action are alleged against United States Rubber Company, the first alleging negligent manufacture, inspection, and the negligent making of false representations concerning the tires and the second also alleging negligence and invoking the doctrine of *res ipsa loquitur.*

"Four causes of action are alleged against Phillips Petroleum Company, the appellant herein, on the following grounds:

"(1) negligence of the manufacturer United States Rubber imputed to Phillips, since the latter represented the tire as being its own product;

"(2) such imputed negligence, invoking the doctrine of *res ipsa loquitur* for proof of negligence;

"(3) breach of express warranty;

"(4) breach of implied warranty.

"The defendant Stuewer cross-complained against the other two defendants, alleging:

"(1) United States Rubber and Phillips had authorized their dealers to make any warranties made by him;

"(2) if joint negligence is shown, contribution should be awarded to Stuewer.

"The defendant Phillips moved for summary judgment pursuant to Wis. Stats., sec. 270.635 (1959) and furnished two affidavits of one of the employees in its sales department in Bartlesville, Oklahoma, stating that Stuewer was not a 'servant, employee, or agent . . . or a dealer' of Phillips, that Phillips was not Stuewer's 'employer, master, or principal,' that Phillips did not exercise supervision or control over him or have the right to do so, that the Phillips tires Stuewer sold plaintiffs were not sold by Phillips to Stuewer but rather were sold to a Phillips' jobber, that the tire in question was wrapped by the manufacturer in such a way that it was impossible for Phillips to inspect it, and that the tire was never unwrapped while in Phillips' possession.

"The plaintiff husband's affidavit in opposition to the motion describes in detail the Phillips signs and trade-marks found on the allegedly defective tire, in prominent places on the station premises, on the attendants' uniforms and on the invoice covering purchase of the tire. The invoice also contained the admonition 'Depend on high-quality Phillips 66 products.'

"The trial court denied the motion for summary judgment and defendant Phillips appealed."

The defective tire, with whatever warranties may have been made to the plaintiffs, was sold in Wisconsin. The tire

blew out and plaintiffs' injuries were received in Indiana. Appellant and respondents apparently agree that the issues of warranty are governed by the law of Wisconsin and the issues of negligence are governed by the law of Indiana. We find no reason to disagree with those conclusions.

*Warranty.*

Plaintiffs' separate complaints against defendant Stuewer allege that to induce the plaintiffs to purchase four tires, of which the defective tire was one, Stuewer expressly warranted and represented that the tires would not blow out suddenly but would lose air only slowly, and Stuewer also impliedly warranted and represented to the plaintiffs that the tires were of merchantable quality and fit for the purposes intended, all of which warranties and representations were false and were made negligently, recklessly, and fraudulently.

In their separate complaints against defendant Phillips Petroleum Company, plaintiffs allege that Phillips had procured the manufacture of the tires and held them out to the public as Phillips' own product, and the representations of Stuewer about the tires were made by and on behalf of Phillips Petroleum Company, the principal of Mr. Stuewer, with respect to the advertising and sale of the said tires marked with the Phillips trade-mark.

Stuewer cross-complained against the United States Rubber Company and Phillips Petroleum Company and there alleged that if Stuewer made any warranties as alleged in plaintiffs' complaint that warranty was one which the Rubber Company and the Petroleum Company had authorized its dealers to make to a customer, whereby Stuewer will have causes of action against those companies.

Answering Stuewer's cross complaint, Phillips Petroleum Company simply denies that Stuewer has any cause of action against Phillips in connection with any breach of warranty, express or implied.

In short, plaintiffs allege that warranties of the tires' qualities were made by Stuewer "on behalf of the Phillips Petroleum Company, the principal of said Mr. Stuewer, with respect to the advertising and sale of said tires marked with the Phillips trade-mark." Stuewer's cross complaint against Phillips alleges that Stuewer's warranties, if in fact they were made, were within the authority granted by Phillips to make them. Phillips denies that it was the principal of Stuewer in the advertising or sale of any tire. It is evident from the pleadings that there is a material issue of fact respecting the authority of Stuewer to make express or implied warranties respecting the tire in question which will bind Phillips.

A summary judgment upon motion may be entered for a defendant upon the affidavit of any person who has knowledge thereof setting forth such evidentiary facts as shall show that his denials or defenses are sufficient to defeat the plaintiff. Sec. 270.635 (1), (2), Stats. 1959. (That statute has additional requirements not in question here.) The affidavits upon which Phillips relies for summary judgment are two affidavits of one Thomas R. Hill, who describes himself as a person employed by Phillips Petroleum Company in its sales department, and who is familiar with Phillips' records, files, contracts, and agreements made for the sale of such products as automobile tires, and affiant avers that at no time was Stuewer a servant, employee, or agent of Phillips Petroleum Company or a dealer licensed or otherwise by Phillips, and Phillips was not at any time an employer, master, or principal of Stuewer and at no time did it exercise supervision or control over Stuewer nor did it have the right to do so.

On the question of the warranties, the plaintiffs have alleged in their pleadings that in making the warranties Stuewer, as agent, acted for Phillips Petroleum Company as principal. Stuewer's pleadings allege that any warranties

which Stuewer made to the plaintiffs were warranties which Phillips had authorized its dealers to make to a customer. Hill's affidavit states that he knows whereof he speaks and that there is no relationship of agency or dealership between Stuewer and Phillips Petroleum Company.

The affidavit is the statement of a conclusion, a statement of an ultimate fact, but it is not a statement of an evidentiary fact such as is required by sec. 270.635, Stats., *supra*. The conclusion of Mr. Hill is not sufficient to defeat either Mr. and Mrs. Wojciuk or Stuewer in their actions against Phillips Petroleum Company. For lack of *evidentiary facts* sufficient to establish Phillips' defense as a matter of law on the issue of liability of Phillips on the warranty, the issue remains in the realm of a disputed question of fact. "If there is any substantial issue of fact, which entitles plaintiffs to a determination thereof by a jury or the court, the motion for summary judgment must be denied." *Parish v. Awschu Properties* (1945), 247 Wis. 166, 174, 19 N. W. (2d) 276. Mr. Hill's affidavits have not foreclosed either the plaintiffs or Stuewer to prove on a trial that the facts and circumstances are such as to bind Phillips Petroleum Company by the warranties alleged to have been made by Stuewer if, in fact, Stuewer did make them.

The trial court was correct in denying Phillips Petroleum Company's motion for summary judgment on this ground.

## Negligence.

Still to be considered is the issue of the liability of Phillips Petroleum Company for negligence in the manufacture of the defective tire which ostensibly was manufactured by Phillips and which was sold to plaintiffs as a Phillips product, and which defect caused the injuries which plaintiffs suffered. The accident occurred in the state of Indiana, and the liability arising from the negligent manufacture of the tire is to be governed by Indiana law.

The general rule to which most of the American jurisdictions conform is that given by Restatement, 2 Torts, p. 1086, sec. 400, as follows:

"One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."

The following comments on the above sec. 400, in the 1948 Supplement to the Restatement, 2 Torts, pp. 707, 708, show that Phillips cannot escape liability here by the assertions in Hill's affidavits:

"c. One who puts out as his own product chattels made by others is under a duty to exercise care, proportionate to the danger involved in the use of the chattels if improperly made, to secure the adoption of a proper formula or plan and the use of safe materials and to inspect the chattel when made. But he does not escape liability by so doing. He is liable if, because of some negligence in its fabrication or through lack of proper inspection during the process of manufacture, the article is in a dangerously defective condition which the vendor could not discover after it was delivered to him.

"d. The rule stated in this section applies only where the actor puts out the chattel as his own product. The actor puts out a chattel as his own product in two types of cases. The first is where the actor appears to be the manufacturer of the chattel. The second is where the chattel appears to have been made particularly for the actor. In the first type of case the actor frequently causes the chattel to be used in reliance upon his care in making it; in the second, he frequently causes the chattel to be used in reliance upon a belief that he has required it to be made properly for him and that the actor's reputation is an assurance to the user of the quality of the product. On the other hand, where it is clear that the actor's only connection with the chattel is that of a distributor of it (for example, as a wholesale or retail vendor), he does not put it out as his own product and the rule stated in this section is inapplicable. Thus, one puts out a chattel as his own product when he puts it out under his name or affixes to

it his trade name or trade-mark. When such identification is referred to on the label as an indication of the quality or wholesomeness of the chattel there is an added emphasis that the user can rely upon the reputation of the person so identified. The mere fact that the goods are marked with such additional words as 'made for' the vendor, or describe him as a distributor, particularly in the absence of a clear and distinctive designation of the real manufacturer or packer, is not sufficient to make inapplicable the rule stated in this section. The casual reader of a label is likely to rely upon the featured name, trade name or trade-mark and overlook the qualification of the description of source."

If the facts concerning the tire and the sale of it to plaintiffs are as plaintiffs allege them to be, the Restatement rule would clearly impose liability on Phillips for the results of negligence in the manufacture of the tire. Appellant does not dispute the application of the Restatement rule in general but submits that Indiana does not recognize it and, on the contrary, the Indiana law is:

"It may be stated as a general rule that the manufacturer of products which in their nature are not inherently dangerous in use when free from defects, rests under no duty to exercise care in their manufacture for the safety of persons with whom he has no privity of contract. [Cases cited.] If, however, such a manufactured product at the time it is sold by the manufacturer is dangerous and unsafe for use for the purpose for which it is intended, and if the manufacturer knows of such defects at the time of sale, the duty rests on him to notify the purchaser of such defects. For a failure to discharge this duty the manufacturer is held liable to any person who may be injured as a result of such defect. [Cases cited.]
"The duty does not extend to the exercise of care in the manufacture of the article. The limit of the duty imposed on manufacturers of articles of this nature is to give notice to the purchaser of any defect known to him which would render its use dangerous. If he discharges the duty thus imposed by notifying the purchaser of any known defects which would

render the use of such article dangerous, his liability is at an end. If the purchaser accepts the article with such knowledge, the liability as to third persons rests on him. [Cases cited.]

"If an article not inherently dangerous is sold by the manufacturer under the belief that it is free from defects which render it unsafe or dangerous for use, he cannot be held liable for negligence in its manufacture in favor of strangers to the contract. The liability of the manufacturer of articles of the character under consideration depends, so far as strangers to the contract are concerned, on the breach of the duty which the law imposes on him to give notice to the purchaser of defects known to him which renders the article unsafe for use for the purpose for which it is intended, or on some fraud or deceit on his part, or some concealment of the defect which would prevent its discovery by a reasonable inspection. [Cases cited.]" *Travis v. Rochester Bridge Co.* (1919), 188 Ind. 79, 84, 85, 86, 122 N. E. 1.

The *Travis Case* is the most-recent expression of the supreme court of Indiana on the subject discussed in the above extract. In that case the court reversed the trial court and ignored *MacPherson v. Buick Motor Co.* (1916), 217 N. Y. 382, 111 N. E. 1050, upon which the trial court had relied. The decision in *MacPherson* was written by Mr. Justice CARDOZO, later a justice of the United States supreme court, and there enunciated the principle of liability generally adopted by the courts in this country and now embodied in Restatement, 2 Torts, *supra.*

The *Travis* decision has not been expressly overruled by the Indiana supreme court—the highest court of the state— but plaintiffs have pointed out that in recent years the Indiana subordinate courts, with at least the tacit approval of the supreme court, have not followed the *Travis* expression of Indiana law. Thus in *Coca Cola Bottling Works v. Williams* (1941), 111 Ind. App. 502, 512, 37 N. E. (2d) 702, the appellate court said:

"The appellant suggests that since the article sold was not 'inherently dangerous' that the appellant would not be liable to the appellee because there was no privity of contract between the appellee and the appellant. The original rule on this matter has been greatly restricted in the later decisions. See *MacPherson v. Buick Motor Co.* (Cardozo) (1916), 217 N. Y. 382, 111 N. E. 1050; Annotated Cases 1916C 440; see also 13 Indiana Law Journal, 85; *Holland Furnace Co. v. Nauracaj* (1938), 105 Ind. App. 574, 14 N. E. (2d) 339; see also 17 A. L. R. 683, and the numerous citations therein. The rule now in the best-reasoned cases is that the manufacturer of foods or bottled goods sold for human consumption may be held liable to the ultimate consumer for injuries caused by foreign deleterious substances in such goods regardless of whether or not there was privity of contract between them."

In *McCloud v. Leavitt Corp.* (1948), 79 Fed. Supp. 286, the federal court was attempting to discover and apply Indiana law. Its analysis considered *Holland Furnace Co. v. Nauracaj* (1938), 105 Ind. App. 574, 14 N. E. (2d) 339, and *Coca Cola Bottling Works v. Williams* (1941), 111 Ind. App. 502, 37 N. E. (2d) 702, and the federal court concluded (p. 291):

"Although these two recent Indiana cases do not expressly repudiate the old rule of nonliability as such, I think a reasonable conclusion to be drawn from the language used and from the fact that the Indiana supreme court denied a transfer in both cases, is that Indiana has, in effect, accepted the exceptions enunciated in the MacPherson case. If it could be said that these two recent Indiana cases merely place the Indiana law in doubt, then, on the basis of that doubt, it would still seem more appropriate for this court to ascribe to the Indiana law, a doctrine of liability which has been widely accepted as being sound, rather than to attribute to Indiana a doctrine long since repudiated by most jurisdictions. . . .

". . . As I have said, in a tort action as I think the Indiana courts now look at it, the question is not whether there must be necessarily privity of contract but whether plaintiff has charged negligence which it might reasonably have been foreseen, would naturally and probably result in injuries to third persons."

The "denial of transfer" in the language just quoted refers to the Indiana statute:

"The jurisdiction of the appellate court shall be final, except under the following conditions: . . .
"Second. . . . Said [losing] party may, at any time within thirty (30) days after his petition for a rehearing [before the appellate court] has been overruled, file in the supreme court an application for the transfer of the case to the supreme court on the ground that the opinion of said division of the appellate court contravenes a ruling precedent of the supreme court, . . ." Burns, Indiana Stats. Anno. (1933), sec. 4–215, p. 1122.

The supreme court's denial of a petition to transfer a case on the ground that the appellate court contravenes a precedent of the supreme court is tantamount to an approval of the conclusion reached by the appellate court. *Smith v. State ex rel. Board of Commissioners* (1907), 169 Ind. 260, 82 N. E. 450.

We have no intention of overruling the learned supreme court of Indiana in its interpretation of Indiana law but if the subordinate courts of that state consider that they are no longer bound by *Travis v. Rochester Bridge Co., supra,* and are free to apply the rule expressed in the *MacPherson Case, supra,* and in sec. 400, Restatement, 2 Torts, *supra,* without their supreme court saying them nay, we, too, may claim a like freedom in our search for the present status of the Indiana law governing the ostensible manufacturer's liability for negligence in the manufacture of the product marketed as his. Availing ourselves of that freedom, we conclude

that Indiana law does not now require it essential to liability in such circumstances that there be privity of contract between the negligent manufacturer and the party injured by the negligence.

Therefore, we determine that a lack of privity of contract between the plaintiffs and the defendant Phillips Petroleum Company is not a defense to the plaintiffs' action against Phillips, if, in fact, there is such lack. In so far as the motion of Phillips for summary judgment rests on the contention that privity of contract is essential to the plaintiffs' action the trial court properly denied the motion.

We conclude that the causes of action against Phillips Petroleum Company based on negligence and also the causes of action based on breach of warranty require the determination of issues of fact. Consequently such causes of action are not appropriate matters to be disposed of by summary judgment.

*By the Court.*—Order affirmed.