Forry, Appellant, *v.* Gulf Oil Corporation.

Argued May 25, 1967.   Before BELL, C. J., MUSMAN-
NO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused February 8, 1968.

*Macey E. Klein,* with him *Hurwitz, Klein, Meyers & Benjamin,* for appellant.

*James H. Stewart, Jr.,* with him *Wilhelm E. Shissler,* and *Nauman, Smith, Shissler & Hall,* for appellee.

*John C. Dowling,* with him *Huette F. Dowling,* and *Dowling and Dowling,* for appellee.

*James K. Thomas,* with him *Metzger, Hafer, Keefer, Thomas and Wood,* for appellee.

OPINION BY MR. JUSTICE JONES, January 3, 1968:

This appeal attacks the propriety of an order of the Court of Common Pleas of Dauphin County which refused to remove a compulsory nonsuit entered at the trial of a trespass action.

On February 27, 1957, Thomas Wagner purchased a new snow tire from George Keller, the operator of a Harrisburg service station. This tire had been manufactured by B. F. Goodrich Co. (Goodrich), distributed to Gulf Tire & Supply Co. (Gulf Tire), and sold by the latter to Keller.

Upon purchase of the tire, Keller mounted it[1] on the right rear wheel of Wagner's motor vehicle, after first having inserted in the tire Wagner's old inner tube which contained three patches. The next day, Wagner, having been informed by a passing motorist that his right rear wheel was "wobbling", drove to a service station operated by Marlin Forry to have the

---

[1] Actually, Keller's employees did the mounting. All references to Keller in this opinion include Keller's employees.

tire and the wheel checked.[2] At Forry's station it was noted that the inner side of the tire at one point gave the appearance of being "unseated". In an attempt to remedy this situation, Forry removed the tire from the wheel, placed it upon a tire mounting machine, first deflated and then partially inflated the tire, removed it from the machine and, while inflating the tire, then resting upon the floor, an explosion occurred seriously injuring Forry.

Forry instituted a trespass action in the Court of Common Pleas of Dauphin County against Goodrich, Gulf Tire[3] and Keller. Forry alleged the following negligence: (1) that Goodrich manufactured this tire for resale in a defective condition dangerous to anyone using or working upon it; (2) that Gulf Tire, by having its name embossed on the tire casing, assumed any liability arising from the manufacture and defective condition of the tire; (3) that Keller, knowing or having reason to know of the tire's defective condition, sold the tire and, by using excessive force in originally mounting the tire, damaged the tire rendering it dangerous for use. Upon completion of Forry's evidence as to liability the trial court granted a compulsory nonsuit as to all three defendants. From the order refusing to remove such nonsuit, the instant appeal was taken.

Forry contends: (a) that, even without his expert witness' testimony as to the cause of the accident, the evidence was sufficient to prove the existence of a de-

---

[2] From the time of the tire purchase until the visit to Forry's service station, Wagner's motor vehicle had been driven approximately 25-30 miles over paved roads and some railroad tracks at speeds no more than 40-45 miles per hour.

[3] Originally named as a defendant, Gulf Oil Corporation, by stipulation of the parties, was removed from the litigation. As against Gulf Tire, all claims were eliminated except that of possible vicarious liability arising from the fact that it had had its name placed on the tire casing.

fective condition in the tire *and* negligence in the original mounting of the tire and that such defect *combined with* the negligent tire mounting caused the tire to explode and that the trial court erred in not submitting the issues to the jury; (b) that the trial court, in excluding a hypothetical question addressed to Forry's expert witness because of the form of such question, committed error; (c) that Gulf Tire, which sold the tire to Keller, was subject to the same liability as Goodrich because its name had been placed on the tire casing; (d) that the trial court, in excluding evidence that Forry had handled the tire in accordance with the standard practice, committed error.

In passing upon the propriety of the entry of this compulsory nonsuit, we accept the evidence produced by Forry as true, we read it in the light most favorable to him and we accord to him the benefit of all reasonable inferences arising from the evidence: *Auel v. White,* 389 Pa. 208, 210, 132 A. 2d 350 (1957).

At the outset, it must be noted that Forry claims that the accident was caused by a *combination* of two factors, the defective condition of the tire *and* the improper handling of the tire when Keller mounted it on the wheel. Absent evidence or reasonable inferences therefrom that *both* factors caused the explosion, Forry will have failed to sustain his cause of action.

In addition to the evidence previously related, certain other evidence is of importance. When Wagner observed the tire at Forry's service station, *the outside of the tire* appeared to be properly "seated" on the rim but the appearance of *the inside of the tire* indicated that a section of the *bead* of the tire was "unseated" at a point ¼″ to ⅜″ from the flange of the rim for a distance of 2½″ to 3″. After the tire had been removed from the mounting machine, Forry placed it upon the station floor with the *inside* portion resting on the floor; without replacing the core of the valve, which

he had removed while the tire was on the mounting machine, and employing an air compressor hose,[4] Forry began to inflate the tire. Wagner, who momentarily had turned his back, heard an explosion and saw Forry in the air. Wagner's testimony was corroborated by Forry up to the point where Forry had removed the tire from the wheel; after that Forry, due to the severity of the explosion, had no further recollection of events. Several hours after the accident, Gerald Forry, Forry's brother, with the use of a tire iron, removed the tire from the rim; when he examined the tire after the explosion, the *outside* of the tire was "unseated" while the *inside* was "seated".

Approximately six and one-half years subsequent to the accident, the tire was delivered to one Isaac Stewart for both visual and X-ray examinations.[5] Stewart testified that, from a visual examination, the tire bore signs of very slight wear and no indication of road trauma; there was a dent or depression in the hard rubber sole of the *bead* at a point opposite the *bead* "*overlaps*" and, within that area, a sharp break in the *beads*. On the basis of X-ray examinations conducted by him, Stewart stated that imbedded in each *bead* were sixteen wires, four laid parallel and each wound around four times; four "*overlaps*"—each approximately $1\frac{1}{4}''$—had slipped out of their original sockets; these *overlaps* had been secured by the rubber itself and were not fastened or staked together; as a result of tension failures, twelve of the *sixteen* wires in the "overlaps" area were broken; opposite that area and directly beneath the dent in the *bead*, which Stewart had visually noted, there was an outward kink toward the tread in the first or inner twelve wires and the

---

[4] This hose had no gauge or control and was capable of carrying a maximum pressure of 150 pounds.

[5] Stewart is a licensed professional engineer who possesses an expertise in "material failures".

four wires which were unbroken were distorted and bulged outward from the other wires.

Stewart testified that where *"overlaps"* are not fastened or staked together, as in the construction of the tire in question, it was the custom and practice in the tire industry to make the *"overlaps"* from 4″ to 6″ in length whereas the *"overlaps"* on this tire were only 1¼″ in length. Stewart's opinion was that a mechanical force had been applied which was sufficient to create the type of dent or depression which he observed in the sole of the *bead* opposite the *"overlaps"* and this force initiated the break in the *bead* wire unit at the point of the *"overlaps"*.

Forry first contends that it is the function of the *bead* wire unit and the *"overlaps"* in a tire to strengthen the tire structure and that the *"overlaps"* in this tire, *due to their insufficiency in length,* slipped out of their attachments and caused a substantial reduction in the strength of the tire's *bead* structure and that such a defect in the construction of this tire constituted a potential danger to persons using or working upon the tire.

Recently, in *Webb v. Zern,* 422 Pa. 424, 220 A. 2d 853 (1966), we adopted §402A, Restatement 2d, Torts,[6] which provides: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in

---

[6] *Webb v. Zern,* supra, had not been decided at the time of the trial in the court below, however, it had been decided prior to that court's determination whether the nonsuit should be removed. The court below apparently believed *Webb* was inapplicable and did not mention either *Webb* or §402 A in its opinion.

which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer had not bought the product from or entered into any contractual relation with the seller." Section 402A—applicable to tires (comment d, §402A)—places the burden upon the plain-tiff to prove that the product was in a defective condition when it left the hands of the seller (comment g, §402A), applies only where the existence of the defective condition in the product makes it unreasonably dangerous to the user (comment i, §402A), imposes strict or absolute liability rather than liability based on negligence (comment g, §402A) and requires no privity of contract for the imposition of liability so that, in the case at bar, Goodrich, the manufacturer, Gulf Tire, the wholesaler, and Keller, the retailer and immediate vendor, would all be considered "sellers" (comment f, §402A). Liability, if it exists, arises from §402A and not from the application of the doctrines of *res ipsa loquitur* or *exclusive control.*

Next, we must inquire whether the proof produced by Forry was of such nature as to render applicable §402A. Goodrich admits that it manufactured this tire for resale and that, as a new tire, it was sold to Gulf Tire for distribution. It was Forry's burden to prove that there was a defect in this tire, that this defect existed when the tire left Goodrich's hands, that the defective condition was unreasonably dangerous to the user and that there was a causal connection between this defect and the explosion of the tire. Such proof could arise either from direct or circumstantial evidence, or both,[7] and the presence of the defect itself

---

[7] As to the quantum of proof required in cases involving allegedly defective tires in the period prior to the adoption of §402A, see: *Baker v. B. F. Goodrich Co.*, 115 Cal. App. 2d 221, 252 P. 2d 24 (1953); *Hewitt v. General Tire & Rubber Co.*, 3 Utah 354, 284 P.

could be inferable from circumstantial evidence (*Hewitt,* supra; *Alexander v. Nash-Kelvinator Corp.,* 261 F. 2d 187 (C.A. 2) (1958), mod. for another reason, 271 F. 2d 524 (C.A. 2) (1959).

Speaking generally, a tire consists of a rubber tread which is bound to nylon or rayon cords, impregnated with rubber and other materials, which are called "plies" and which form the sidewalls of the tire. Attached to these "plies" are "beads" which are made up of a number of turns of steel wires insulated with rubber compounds and wrapped in fabric. These "beads" hold tight and taut the mounted and finished tire along the circumference of the sidewalls which come in contact with the rim of the wheel.[8] The function of the bead wire unit is highly important because upon it depends the retention of the tube in the tire (in tires which use tubes) and the retention of the tire itself within the circumference of the rim of the wheel.

The evidence in the case at bar indicates that, in the tire in question, the bead wire unit contained sixteen wires and that, after the accident,[9] twelve of these wires were found to be broken and the four unbroken wires were kinked outwardly; at the point of the breach in the bead wire unit was the area of "overlaps" which were not fastened or staked together but secured in the rubber itself and which had slipped out of their origi-

---

2d 471 (1955) ; *Pass v. Firestone Tire & Rubber Co.,* 242 F. 2d 914 (C.A. 5) (1957) ; *Mayhew v. Pierce Tire Co.,* 120 So. 2d 451 (1960) ; *Lewis v. U. S. Rubber Co.,* 414 Pa. 626, 202 A. 2d 20 (1964). See generally : *Greyhound Corp. v. Brown,* 269 Ala. 520, 113 So. 2d 916 (1959) ; Frumer-Friedman, Products Liability, Vol. 1, §§12.03[2] [b], 12.03[9][c], [d].

[8] See: *Leahy v. U. S. Rubber Co.,* 216 F. Supp. 633 (1963).

[9] We adopt, in determining this appeal, the premise that even though the expert witness whose examination revealed this allegedly defective condition did not see the tire until nearly six and one-half years after the accident, the tire remained in the same condition that it was in after handling of the tire by Gerald Forry.

nal sockets. The expert witness testified that the "overlaps" in this tire were only 1¼″ in length. As previously stated, he then testified that, where, as in this tire, the "overlaps" were left unfastened or unstaked in the course of manufacture, it was the custom and practice in the tire industry to make the "overlaps" 4″ to 6″ in length.[10] As we read this record in the light most favorable to Forry, we find established: (a) a custom in the tire industry as to the length of "overlaps" where tires are manufactured in such manner that the "overlaps" are permitted to remain unfastened, (b) a departure from such custom by Goodrich in making the "overlaps" on this tire only 1¼″ instead of 4″ to 6″ in length and (c) a reasonable inference that such a variance in the construction of so vital a part of this tire created an unreasonable potential of danger to those who would use or work upon this tire. If the jury found credible the testimony of the expert witness in this respect, it could have found that this tire was defective in the length of the "overlaps".

The expert witness testified both from his personal observation and the results of an examination by

---

[10] It was Forry's burden to establish such custom or practice with certainty. *Doyle v. Atlantic Refining Co.*, 357 Pa. 92, 96, 53 A. 2d 68 (1947). As Mr. Justice HOLMES stated in *Texas & Pacific Ry. Co. v. Behymer*, 189 U.S. 468, 470, 23 S. Ct. 622 (1903): "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." While the existence of a custom or a practice does not furnish a conclusive test that a variance from such custom or practice is negligence (*Donnelly v. Fred Whittaker Co.*, 364 Pa. 387, 390, 72 A. 2d 61 (1950), yet proof of such variance combined with proof or a reasonable inference that such variance could create a dangerous situation may prove a lack of due care upon which a finding of negligence can be predicated (*Muller v. Kirschbaum Co.*, 298 Pa. 560, 148 A. 851 (1930)).

X-rays of this tire.[11] He described the exact point where the bead wire unit was broken, the break itself, the juxtaposition of such break in the bead wire unit to the area of the length-deficient or undersized "overlaps" and the fact that these "overlaps" had become separated from their original moorings. It is clear from the testimony of this witness that, in his opinion, this tire contained a defect which arose from the manner of its manufacture. It may well be that Goodrich could have contradicted, by proof, this witness' testimony; however, on the record before us, there is evidence from which the jury could have found the existence of a defect in the tire. Such testimony, coupled with evidence that this tire was a new tire when purchased by Gulf Tire and Wagner and had had little wear or road trauma when it exploded, together with the lack of any evidence that the defect in the tire (as distinguished from the dent or depression in the sole of the bead unit) arose in any manner other than the mode of its manufacture, constitutes strong circumstantial evidence from which it could be reasonably inferred that this defect in the tire existed when it left the hands of Goodrich.[12]

We believe that the record proof renders applicable the provisions of §402A, supra, and that the doctrine of strict liability imposed thereunder would be applicable to Goodrich, the manufacturer of this tire, if the defective condition was the *sole* cause of this accident.

If Goodrich would be liable, then Gulf Tire would also be liable under the theory of vicarious liability set forth in §400, Restatement 2d, Torts, which pro-

---

[11] See: II Wigmore, Evidence (3d ed.), §678; 82 A.L.R. 1338.

[12] We need not go so far as the Court in *Baker*, supra: "Automobile tires properly constructed do not explode when inflated in the process of being mounted in the usual and customary manner upon a wheel designed to receive them." See also: *Hewitt*, supra, 284 P. 2d at 474.

vides: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." The reasons for the extension of liability in such situation are sound: (a) the name and the trademark of the sponsor, plus the reputation of the sponsor, constitute "an assurance to the user of the quality of the product" (comment d, §400) and (b) "reliance [by the user] upon a belief that [the sponsor] has required [the product] to be made properly for him" (comment d, §400).[13] We adopt §400 of the Restatement as part of the tort law of this Commonwealth. In the instant factual situation, Gulf Tire had had its name embossed upon the casing of this tire and clearly put out as its own product this tire within the language of §400. In addition to contending that §400 should not be adopted by this Court, Gulf Tire argues that §400 is presently inapposite because Forry placed no reliance on the name of Gulf Tire on the tire nor was he mislead thereby. Such argument goes to a matter of defense the validity of which would depend upon the resolution of the facts produced in support thereof by Gulf Tire. Under the instant circumstances, if the defect in the tire caused the explosion of the tire, then, under the provisions of §400, Gulf Tire would be vicariously liable.

Even though there is such evidence of record as would render both Goodrich and Gulf Tire liable for this defective condition of the tire, the very serious and essential problem of causation arises. It is not the theory of Forry that the defective condition of this tire *alone* caused this accident; on the contrary, it is For-

---

[13] As to the extension of liability under §400, see: Harper & James, The Law of Torts (1956), Vol. 2, §28.28 and cases cited therein; Frumer-Friedman, Products Liability, Vol. 1, §10.02 and cases cited therein; *Wojciuk v. U. S. Rubber Co.*, 13 Wisc. 2d 173, 108 N.W. 2d 149 (1961).

ry's theory that this accident arose from a *combination* of excessive force applied by Keller in the original mounting of this tire *and* the defective condition of the tire. Absent proof of the use of excessive force in the mounting of this tire by Keller, it is not contended by Forry that the defect in the tire *alone* caused this accident.[14] Moreover, Forry must proceed upon the theory that, if the defect in the tire caused an unreasonable risk of harm to the users thereof or to those working upon it, Goodrich would still remain liable to Forry even if Keller was negligent in mounting the tire because Keller's negligent act would have been foreseeable by Goodrich. (See: *Foley v. The Pittsburgh Des Moines Co.,* 363 Pa. 1, 26, 68 A. 2d 517 (1949) ; *Shimer v. Bangor Gas Co.,* 410 Pa. 92, 100, 188 A. 2d 734 (1963) ; Harper & James, The Law of Torts, §§28.10, 28.11).

It was essential that Forry establish by competent evidence that Keller improperly mounted this tire, otherwise no liability on the part of any of the defendants would exist. The case against Keller rests on several predicates: (1) on the sole of the bead wire unit opposite the area of the undersized "overlaps" there was an observable dent or depression; (b) this dent or depression resulted from a mechanical force excessively applied at that point to the sole of the bead wire unit;[15] (c) by reason of this dent or depression

---

[14] At the previous trial of this case,—which was continued because of the failure of Forry to produce the rim of the wheel,— Stewart had testified that the cause of the explosion was this *combination* of factors. We must assume that his views would not have changed had he been permitted to answer the hypothetical question addressed to him at the instant trial as to the cause of the explosion.

[15] Beneath the dent or depression the three inner courses of twelve wires in the bead wire unit were kinked outwardly. There was evidence that a mechanical force, applied at the point where the dent or depression appeared, sufficient to outwardly kink these

created by the exertion of excessive mechanical force at that point, when Forry attempted to correct the "unseated" condition on the inside of the tire, the damaged bead wire unit allowed the inner tube at that point to escape from the tire, and, having thus lost its protective support, the tube sustained a 13 inch rupture and exploded; (d) that the excessive mechanical force was applied by Keller when the tire was mounted. Assuming, arguendo, the existence of sufficient evidence to support the first three predicates, was there any evidence that, when Keller mounted this tire, excessive force was used? Forry contends that the concatenation of proven events were such that the jury could *infer* that Keller employed excessive force in mounting the tire. With that conclusion we do not agree.[16]

The dent or the depression which led Stewart to the conclusion that a mechanical force had been applied to the tire at that point was observed six and one-half years after the accident. From the time of the purchase of the tire, three persons had performed some work on or handled this tire, i.e., Keller, Forry and Gerald Forry. Original mounting of the tire had been by Keller; Forry had "tried to reseat the tire onto the wheel"; Gerald Forry had removed the side of the tire casing from the rim of the wheel on a tire machine. There is not a scintilla of evidence that Keller used any excessive mechanical force in mounting the tire; on the contrary, the record is silent as to just what Keller did at all. True, the *opportunity* for improperly handling of the tire by Keller was shown but

---

wires would initiate a break in the bead wire unit at the area of the "overlaps".

[16] In reaching this conclusion, we have even taken into consideration the answer of Stewart, which the court below struck from the record, that the mechanical force was exerted by a "tire mounting tool".

both Forry and Gerald Forry had *equal opportunity*. There is no evidence, lay or expert, as to *when* this dent or depression was caused or *by whom* it was caused. Forry has simply failed to prove by any evidence, direct, circumstantial, or both, that Keller mishandled this tire. As was aptly said by the Superior Court in *Radies v. Reading L. G. S. & S. Soc.,* 197 Pa. Superior Ct. 509, 178 A. 2d 789 (1962) : " 'Proving that an accident happened, or the *existence of an opportunity for it to happen in the manner alleged,* is entirely insufficient to establish negligence. . . .' " (p. 513). (Emphasis added). In *Marrazzo v. Scranton Nehi Bottling Co.,* 422 Pa. 518, 223 A. 2d 17 (1966), we recently said : "A *possibility* of such causation . . . is not sufficient to impose liability. . . ." (p. 528). Moreover, the "reasonable inference" rule of *Smith v. Bell Telephone Co.,* 397 Pa. 134, 153 A. 2d 477 (1959) is inapposite since there is no evidence on this record from which *any* reasonable inference could be drawn of Keller's negligence. *Smith,* supra, itself teaches that: ". . . the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based." (p. 138)

While there is evidence that this tire was defective there is no proof or allegation that such defect *alone* caused this accident. On the contrary, Forry contends that the defect *plus* Keller's negligent conduct in mounting the tire caused the accident and of the latter there is a complete lack of any proof. Viewed in the light most favorable to Forry, the record would show that *someone* by the use of excessive mechanical force caused the dent or depression in the sole of the bead of this tire; the record does not show that that person was Keller and the lack of such proof is fatal to Forry's case.

We need not, in view of the conclusion reached, consider Forry's other contentions that the trial court committed error in the exclusion of certain evidence other than to state that, even if such evidence had been admitted, the result could not have been otherwise.

Order affirmed. Appellant to pay costs.

Mr. Chief Justice BELL joins in this opinion.

Mr. Justice EAGEN concurs in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Pennsylvania Rules of Civil Procedure 1020(c) succinctly provides: "Causes of action . . . may be pleaded in the alternative." The import of this provision, designed to ameliorate the stringent rules of common-law pleading, is well stated in Goodrich-Amram, Standard Pennsylvania Practice §1020(c)-1, at 144 (1962): "Alternative pleading has become, since the adoption of the Rules, a common method of averment. It may be used to join two or more defendants *when it is not clear which defendant was responsible for the loss* or to join two or more theories of action when it is not certain which theory is applicable to the facts." (Emphasis supplied.)

Appellant's complaint contained four causes of action. The first, after detailing various allegedly negligent acts by Goodrich, claimed that "all of the aforesaid injuries and damages suffered by plaintiff were caused by the carelessness and negligence of the B. F. Goodrich Company." The second insisted that Gulf Tire was liable to appellant for its negligent acts; the third that Keller was liable for his negligent acts. Only in the fourth count did appellant plead that his injuries were the result of the joint negligence of these three defendants. Appellant, therefore, pleaded four

causes of action in the alternative. As the majority[1] correctly concludes, appellant's evidence was sufficient to create a question for the jury as to the liability of Goodrich and Gulf Tire yet, because of the majority's belief that appellant alleged that the accident was a result *solely* of the combination of the negligence of all three appellees, the majority sustains the nonsuit.

I have read appellant's complaint with utmost care, have examined the record closely and reviewed the opinion of the court below. I can find absolutely no support for the majority's view of appellant's theory of recovery. Although appellant did allege that he was injured as the result of the combined negligence of the three appellees, he also alleged that each was *solely* liable to him for their individual negligent acts. Assuming arguendo that there was no evidence of Keller's negligence and that the nonsuit was properly granted as to him, appellant had produced sufficient evidence of negligence on the part of Goodrich and Gulf Tire to escape the nonsuit. To deprive a litigant of a jury trial by a reading of his complaint which would be worthy of a Blackstonian lawyer not only disregards the mandate of our rules but returns this Court to an era long since past.

Furthermore, although I agree with the majority that §400 of the Restatement 2d should be adopted as part of the law of this Commonwealth,[2] the majority's conclusion that an individual who places his brand on the product of another may avoid liability by demonstrating that the purchaser did not specifically rely on this brand is erroneous. The section states that the

---

[1] The opinion denominated in this opinion as the majority opinion does not in fact represent the views of a majority of this Court.

[2] The majority correctly concludes that Gulf Tire's liability can be predicated upon the fact that it is a seller within the meaning of §402A. Its dissertation on §400 is therefore dictum.

brand-placer "is subject to the same liability as though he were its manufacturer." It does *not* state that non-reliance by the purchaser is a defense. Although the policy prompting the adoption of this section is the belief that a purchaser usually relies upon the brand name placed on the goods, there is no indication in the reporter's notes that nonreliance is a defense. See *Wojciuk v. United States Rubber Co.*, 13 Wisc. 2d 173, 108 N.W. 2d 149 (1961) (suit against manufacturer, brand-placer and mounter of tire.)

I dissent.

Mr. Justice MUSMANNO and Mr. Justice O'BRIEN join in this dissenting opinion.