## Oehler et vir, Appellants, *v.* Davis.

Argued June 15, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Arthur W. Hankin,* with him *Meyer, Lasch, Hankin & Poul,* for appellants.

*Richard P. McBride,* with him *William B. Moyer* and *Power, Bowen & Valimont,* for defendant, appellee.

*Frederick E. Smith,* with him *Smith & Toner,* for additional defendant, appellee.

OPINION BY PACKEL, J., December 11, 1972:

The progress of the law in extending liability without fault to product suppliers should not be in disregard of fundamentals pertaining to the tort law of causation. In negligence cases there has been the modern admixture of foreseeability and causation to determine the existence of liability.[1] If in a negligence case foreseeability and cause are to be examined to determine the scope of liability, it would seem that the same should be true in a case of unintentional conduct involving liability without fault.[2]

The application of the concepts of foreseeability and legal cause to products liability makes it manifest there should be no arbitrary limitation of liability to only purchasers and their families. In this respect we are of the view that product liability may extend to persons not in privity or unconnected with the original transaction.

This case turns on the question of whether there should be liability for injury resulting from the playfulness of a dog when normally there is no such liability to a person injured thereby. Should there be liability on the part of one who, without fault, enables such a dog to wander? In the physical or philosophical sense the supplying of a defective ring that was supposed to hold the dog was a cause of the injury. That,

---

[1] Fletcher, Fairness and Utility in Tort Theory, 85 Harv. L. Rev. 537, 572 (1972) refers to "the now rejected emphasis on the directness and immediacy of causal links, as well expressed in the *Polemis* case and Judge ANDREWS' dissent in *Palsgraf*."

[2] See *Keeton,* Legal Cause in the Law of Torts, pps. 108-109 (1963), where he points out that the reason for product liability calls for the application of the same principles of causation as apply in negligence cases.

however, is not a sufficient basis for liability.[3] The determination should be whether that was only a "but for" cause and not a legal cause. The answer in this case should be no different from that in a negligence case. If the owner had left his dog with a friend while on vacation, would there be liability for a similar injury if the friend had carelessly permitted the dog to leave the premises?[4]

There appears to be no significant body of law involving causation as applied to product liability cases, but the situation is otherwise with respect to negligence cases. The Restatement 2d Torts, §430, states the necessity of an adequate causal relation as follows: "In order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm." In more detailed analysis, *Comment b* of that section points out that the duty to protect some persons does not extend to other persons: "So too, if the actor is under a duty to take positive steps for the protection of particular classes of persons only, his failure to take such steps subjects him to liability only to such persons and cannot subject him to liability to third persons to

---

[3] In *Whitner v. Lojeski*, 437 Pa. 448, 455, 263 A. 2d 889, 893 (1970), Mr. Justice POMEROY made the point as follows: "One could wish that the pronouncements of this Court on the subject over the years had been somewhat more lucid, more consistent, more forthright; had distinguished between cause in a factual or 'philosophic' sense and proximate or legal cause; had acknowledged that the concept, like that of negligence itself, was designed not only to permit recovery for a wrong, but to place such limits upon liability as are deemed socially or economically desirable from time to time." [Footnote omitted.]

[4] Cf. *Andrews v. Jordan Marsh Co.*, 283 Mass. 158, 186 N.E. 71 (1933), where the court concludes that there is no reason for putting greater responsibility on a department store than on the owner of the dog.

whom he owes no such duty." Learned HAND, J., in *Sinram v. Pennsylvania R.R.*, 61 F. 2d 767, 770 (2d Cir. 1932), pointed out: "But so long as it is an element of imposed liability that the wrongdoer shall in some degree disregard the sufferer's interests, it can only be an anomaly, and indeed vindictive, to make him responsible to those whose interests he has not disregarded."

If a vicious dog escaped and bit one or more persons, the existence of a duty to protect those persons would not mean that there was a duty to protect a person hurt by a non-vicious dog.[5] MAGRUDER, C. J., in *Marshall v. Nugent*, 222 F. 2d 604, 610 (1st Cir. 1955), pointed out: "Back of the requirement that the defendant's culpable act must have been a proximate cause of the plaintiff's harm is no doubt the widespread conviction that it would be disproportionately burdensome to hold a culpable actor potentially liable for all the injurious consequences that may flow from his act, i.e., that would not have been inflicted 'but for' the occurrence of the act."

Although §402A of Restatement 2d on Torts sets forth the modern rule of products liability, it has no provision dealing with the problem of legal causation. That issue is referred to collaterally in *Comment a* to §435B, which deals with unintended consequences of intentional invasions, as follows: "The rule stated in this Section affects only the measure of damages for a tort, but is based upon the principle which underlies both rules, namely, that responsibility for harmful consequences should be carried further in the case of one who does an intentionally wrongful act than in the

---

[5] *Cf.* Restatement 2d, Torts, §438, as to harm caused by animals negligently permited to wander, in which *Comment a* expressly provides: "It does not apply to those animals which are customarily permitted to run at large."

case of one who is merely negligent or is not at fault."
*Comment e* of §430, which deals with the necessity of
adequate causal relation provides: "Although the rule
stated in this Section is stated in terms of the actor's
negligent conduct, the necessity that the conduct be a
legal cause of the harm is equally applicable where the
conduct is intended to bring about the harm, or where
it is such as to result in strict liability. The applicable
rules as to what constitutes legal cause are not, how-
ever, entirely the same as those for negligent conduct.
See §870, and §519 and Comments." Section 870 re-
fers to liability for intended consequences and Section
519 refers to liability for ultra hazardous activities.

The restriction of liability to harm coming within
the scope of the duty is illustrated by the two cases
decided in this Court. In *Chamberlain v. Riddle,* 155
Pa. Superior Ct. 507, 510, 38 A. 2d 521, 523 (1944),
the defendant in violation of the law permitted his auto-
mobile to be driven by an unlicensed driver and yet
the Court held that the defendant was not liable for
harm done by the unlicensed driver, as follows: "Even
if we were to assume that in permitting Strasser to
operate his car, appellee was guilty of a violation of
the penal provision of the Code, there is nothing to
show that the violation was the proximate cause of
minor appellant's injury." Likewise in *Barshay v.
American Ice Co.,* 84 Pa. Superior Ct. 538, 540 (1925),
KELLER, J., held that the leaving of a horse unattended,
though careless because of the danger of runaways, was
not the legal cause of the horse biting a child: "Un-
doubtedly one who leaves a horse unhitched or unat-
tended on a city street takes the risk of whatever the
horse may do by reason of his being unhitched or un-
attended; and if a person is injured because of the
owner's failure to have his horse hitched or attended,
a prima facie case of negligence is made out sufficient
to take the case to the jury. But the principle has no

application to an injury not caused by, nor having any relation to, the owner's failure to hitch or attend his horse. All the cases cited above were runaways where the failure to hitch or tie the horse was directly connected with the accident and resulting injury. . . . But this accident,—a sudden snap at the child,—could have occurred just as well whether the horse was hitched or not, and whether a driver was on the wagon or not, or even if both measures had been resorted to. It had no causal connection with the failure to hitch the horse or hold the reins while ice was being delivered. There being no other evidence of defendant's negligence its point for binding instructions should have been affirmed."

In the instant case, the failure of the ring to confine the dog was in conjunction with a breach of duty by the supplier to keep the dog confined, but that breach had no legal connection with harm brought about by the playfulness of the dog. In a practical sense, it can be said that a plaintiff who has no cause of action because of the playfulness of a dog, should not acquire a cause of action because of the violation of a duty, imposed without fault, which enabled the dog to wander. The public concern which brought about products liability without fault is well served by permitting recovery by anyone encompassed within the scope of the duty, without a broadening of the liability to allow recovery by one outside the scope of the duty.

The order of the court below is affirmed.

---

DISSENTING OPINION BY CERCONE, J. :

Mary A. Oehler and her husband Joseph instituted an action in trespass against Andy Davis based on personal injuries sustained by Mrs. Oehler when she was jumped upon and held captive by a German Shepherd dog owned by Mr. Davis. Mr. Davis joined as an ad-

ditional defendant the Puppy Palace Enterprises from whom he had purchased a dog collar with which he secured the dog on his premises. He alleged the metal ring on the collar broke because it was defective, thus permitting the dog to run loose. The lower court entered involuntary nonsuits as to both the original and the additional defendant, it being of the view that the evidence could not sustain any verdict against either of them.

I agree that the record fails to sustain any finding of negligence on the part of Mr. Davis. Plaintiff contends there was a violation of the Dog Law of 1965, Act of December 22, 1965, P. L. 1124, Art. VII, §702, 3 P.S. 460-702, which provides: "It shall be unlawful for the owner or keeper of any dog to fail to keep at all times such dog either (1) confined within the premises of the owner, or (2) firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured, or (3) under the reasonable control of some person, or when engaged in lawful hunting or field training accompanied by an owner or handler."

Mr. Davis' testimony revealed that he had left the dog securely tied and attached to a stake in the ground by means of a chain which fastened to a "D" shaped ring on the collar of the dog; that the "D" shaped ring broke, permitting the dog to escape from his yard. The expert testimony was uncontradicted that the ring broke because of two internal defects in the make-up of the ring (improper casting process and unsuitable material), which internal defects would not have been noticeable to Mr. Davis. Though oral evidence, even if uncontradicted, is for a jury's determination,[1] in this

---

[1] "Proof may be clear and uncontradicted, but if it depends on oral testimony it is for the jury to decide": *Yurkonis v. Dougherty*, 382 Pa. 387, 391 (1955).

case the oral evidence was insufficient as a matter of law to support a verdict against Mr. Davis. If the jury had believed the above testimony, there would be no breach of the statute by Mr. Davis in that he had every reason to believe that he had in fact complied with subsection (2) thereof.[2] If the jury had chosen for some reason not to believe the above testimony and had determined Mr. Davis had not complied with the statute, the violation of the statute cannot serve, as contended by plaintiff, as proof of negligence per se entitling plaintiff to recovery. This was already established by our Pennsylvania Supreme Court in *Andrews v. Smith,* 324 Pa. 455 (1936), with reference to the prior provisions of the said Dog Law, which differed from the present provisions of section 702 in no matter material to the issue here involved.[3] Our Supreme Court in the *Andrews* case clearly held: "The majority of the Court below correctly held that there is nothing in the Dog Law of May 11, 1921, P. L. 522, as amended by the Act of May 6, 1927, P. L. 883, that rendered defendants liable to the plaintiff for the injuries inflicted upon him by the former's dog. That Act does not purport to change or affect in any way the rule that an owner's liability for the vicious acts of his dog cannot be predicated upon ownership alone, but it must be based also on an owner's knowledge of his dog's viciousness and his failure to then take proper steps to prevent that viciousness displaying itself to the hurt of human beings." In the instant case, there was no evidence presented from which a jury could find that Mr. Davis knew or should have known of any

---

[2] The three requirements of said section 702 are in the disjunctive.

[3] The major distinction between the present law and the prior law is the prior provision required confinement of the dog only between the hours of sunset and sunrise; the present law requires confinement 24 hours a day.

vicious, or excessively playful but dangerous, propensities of his dog which would require him to anticipate and guard against the type of conduct which resulted in injury to Mrs. Oehler. See *Groner v. Hedrick,* 403 Pa. 148 (1961) and *Clark v. Clark,* 207 Pa. Superior Ct. 193 (1965). The lower court therefore properly entered an involuntary nonsuit in favor of Mr. Davis.

However, I would reverse the entry of the nonsuit as to the additional defendant Puppy Palace Enterprises. The uncontradicted testimony establishes: that Mr. Davis left his dog secured by a collar to a chain attached to a post on his property; that the "D" ring of the collar was defective because of improper casting and improper composition; and that it broke because of such defects.[4] As before stated, such oral evidence, though clear and uncontradicted, is for the jury's determination: *Yurkonis v. Dougherty,* supra. If the jury believes this testimony it would be required to find that but for the defects in the "D" ring, Mr. Davis' dog would not have run loose to cause injury to Mrs. Oehler.

The Majority has determined, however, that such facts would not impose strict liability on the part of the vendor under section 402A of the Restatement of the Law of Torts,[5] which was first adopted and applied by

---

[4] The statute of limitations had run as to the manufacturer of the defective "D" ring.

[5] That section reads as follows: "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

our Pennsylvania courts in *Webb v. Zern,* 422 Pa. 424 (1966).[6] The Majority's decision is based on intermingled holdings as to lack of duty and legal causation, with which holdings I strongly disagree.

It is my opinion, that the injured wife-plaintiff was within the scope of duty encompassed by the vendor's strict liability under section 402A as adopted and broadened by our Pennsylvania decisions. It was the lower court's view that an extension of such absolute liability to an "innocent bystander" could only be authorized by the legislature. I do not agree. We are not here dealing with statutory limitations, such as that imposed by the Uniform Commercial Code and referred to in *Kassab v. Central Soya,* 432 Pa. 217, 232 (1968), as "horizontal privity" that is, "who, besides the purchaser, has a right of action [in assumpsit] against the manufacturer or seller of a defective product" with respect to breach of an implied warranty. The limitations of such "horizontal privity" provided for in the Uniform Commercial Code were held in *Hochgertel v. Canada Dry Corp.,* 409 Pa. 610 (1963), to prevent recovery in assumpsit for breach of warranty by an injured employee of the purchaser. How-

---

[6] Puppy Palace makes comment on the fact that absolute liability under section 402A was not specifically pleaded in the complaint filed against it. However, this was not fatal to a recovery under that theory since the allegations of the complaint against it were sufficient to bring the case within the purview of such absolute liability. What was stated in *Godina v. Oswald,* 206 Pa. Superior Ct. 51, at 55 (1965), with respect to the failure to plead the statute under which recovery could be sustained is equally pertinent here. Our Court there stated: "Statutes need not be specifically pleaded but there must be set forth sufficient facts to bring the case within the statute in question. Goldberg v. Friedrich, 279 Pa. 572, 124 A. 186 (1924). The niceties of procedure and pleading make fine intelligence games for lawyers but should never be used to deny ultimate justice." This is the reason for our modern approach to rules of civil procedure.

ever, in a trespass action we are not faced with such statutory limitations of horizontal privity present in actions in assumpsit based on breach of warranty.[7] The issue here is the extent of absolute liability imposed not by the legislature but by a rule of law adopted by our Pennsylvania courts. Though Section 402A does not expressly provide for recovery by "innocent bystanders", that failure is not controlling and in fact was not intended to be by the drafters who in Comment O specifically addressed themselves to the issue at hand stating: "The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by such persons [casual strangers]." Just as our Supreme Court had the authority in *Webb v. Zern*, supra, of "today adopting a new basis of liability", noting the "modern case law and commentaries which extend and recommend the extension of the law of strict liability in tort for defective products", so also our courts have the authority to extend the scope of that strict liability to an innocent bystander or casual stranger who is not in horizontal privity but who, nevertheless, has suffered injury as a proximate cause of the defect in the item supplied.

The Pennsylvania Supreme Court has already clearly indicated that the scope of absolute liability in a trespass action is much broader than that based on breach of an implied warranty. Though in the *Hoch-*

---

[7] In fact, even in an assumpsit action based on breach of warranty the Court held in *Kassab v. Central Soya*, supra, that the legislature not having made any provision in the Uniform Commercial Code for "vertical privity" (who, besides the immediate seller, is liable to the consumer for injuries caused by the defective product), the courts were free to make their own requirements. The court there stated, page 233, ". . . it is clear beyond peradventure that the drafters of the code never intended 2-318 to set any limits on vertical privity, nor did they intend all changes in the law to come only from the Legislature . . ."

*gertel* case, supra, the injured workman could not recover in an assumpsit action for breach of warranty of the article supplied his employer because he did not come within the Uniform Commercial Code's provisions as to "horizontal privity", yet, in a trespass action, *Bartkewich v. Billinger,* 432 Pa. 351 (1968), the Supreme Court, and the parties, agreed that section 402A governed the plaintiff-workman's cause of action for injuries resulting from a defective machine supplied his employer by the defendant.[8]

In *Forry v. Gulf Oil Corporation et al.,* 428 Pa. 334 (1968), the purchaser of a new tire stopped at a service station to have his right rear wheel checked after being informed by a passing motorist that it was "wobbling". While the service station attendant was working on the tire, the tire exploded, causing him serious injuries. In an action of trespass by the attendant, the court held that upon proof that the tire was defective when it left the hands of the seller, section 402A would impose strict liability for the injuries upon Goodrich, the manufacturer; Gulf Tire, the wholesaler; and Keller, the retailer and immediate vendor, all of whom the court considered "sellers".

This court also has clearly indicated the scope of absolute liability in trespass to extend to casual strangers or innocent bystanders in *Flavin v. Aldrich,* 213 Pa. Superior Ct. 420 (1968). In that case, Mrs. Aldrich had purchased a 1958 Plymouth from Cuda and while she was operating it one-half hour after the purchase, the brakes failed, causing her to strike the rear of the Flavin automobile. The Flavins filed suit against Aldrich and Cuda and the case proceeded to

---

[8] Recovery was denied, however, because of the workman's having placed himself "in an obviously dangerous position by reaching into the moving machine rather than walking around to where he knew the controls were."

trial prior to our Supreme Court's adoption of 402A in *Webb v. Zern,* supra. On appeal to this court we held there was sufficient evidence of negligence on the part of Cuda to sustain the jury's verdict against it. However, our court did note, with approval (pages 426-427) the trial court's observation that *Webb v. Zern* would now permit Flavin's recovery against Cuda merely upon proof that it had supplied a defective vehicle to Aldrich. Our court there stated: "The Trial Judge submitted the case to the jury on the theory that the defendant Cuda was under a duty, not only to the purchaser of the vehicle but to the public as well, not to sell a car which was defective where it knew or could have known of the defect by reasonable inspection. Although this was a proper expression of the law at the time this case was tried, since that time the Pennsylvania Supreme Court, in Webb v. Zern, 422 Pa. 424 (1966), has adopted Restatement 2d, Torts §402A (1965), 'as the law of this Commonwealth in tort actions involving the liability of those who sell products in a defective condition.' Ferraro v. Ford Motor Co., 423 Pa. 324 (1966). Under this state of the law, the plaintiff would have been entitled to a charge that Cuda would be strictly liable, regardless of negligence, if they found that defendant had sold the car in a defective condition. See: Ferraro v. Ford Motor Co., supra."

It is my opinion, therefore, that in a trespass action, the absolute liability of the supplier of a defective product is not limited to any particular scope of horizontal privity but extends to all harm proximately caused by the defect in the product supplied, regardless of what relationship the injured person occupied either to the seller or to the purchaser. Stated in another manner, the absolute liability in trespass of a vendor for a defective product supplied by it is not restricted to any particular class of persons but is re-

stricted by the manner of injury, there being no liability unless the defect was a proximate cause of the injury.

Puppy Palace argues and the Majority agrees that the defect in the ring supplied by it was irrelevant because there is no liability merely for allowing the dog in question to run loose in violation of the Dog Law of 1965. However, such reasoning is based on the false premise that the vendor's liability is based on the 1965 Dog Law or on the law of negligence. Though the vendor may not be liable merely for allowing the dog in question to run loose in violation of the Dog Law of 1965, it is strictly liable under section 402A for injuries resulting from a defect in its product.

The Majority opinion is based on a faulty premise as to the basis of the liability of Puppy Palace, for it says: "This case turns on the question of whether there should be liability for injury resulting from the playfulness of a dog when normally there is no such liability to a person injured thereby. . . . The answer in this case should be no different from that in a negligence case. If the owner had left his dog with a friend while on vacation, would there be liability for a similar injury if the friend had carelessly permitted the dog to leave the premises?"

It is my strong belief that in so arguing and holding, the Majority fails to note the all-important fact that the very purpose of section 402A is to impose strict liability where normally liability would not exist under the laws of negligence. The liability of the dog owner is tested by the rules of the negligence and the law is clear that a dog owner is liable for injuries caused by his dangerous overplayfulness where there is or should be knowledge of such propensities by the owner: *Groner v. Hedrick*, 403 Pa. 148 (1961). The liability of the seller of the dog collar, however, is tested not by the rules of negligence as has been done by

the Majority in its opinion, but in accordance with the strict liability of section 402A which has been adopted and broadened, as already discussed, by the various opinions of the Supreme Court and of this Court. This Court has already very clearly noted such distinction and the reasoning behind it in *MacDougall v. Ford Motor Co.*, 214 Pa. Superior Ct. 384 (1969), saying: "The evidentiary requirements of negligence law demand proof that injury is proximately caused by a specific defect in design or construction because liability hinges upon whether the accident could have been avoided by the exercise of reasonable care. *In contrast, the concern of both §402A and warranty law is with the fitness of the product, not the conduct of the producer as measured by due care.*" (Emphasis added.)

The majority opinion, by applying the requirements of negligence law to strict liability under section 402A has in effect abrogated the application of strict liability to those very cases in which the rule was promulgated to apply. As stated in Comment f to the Restatement 2d, Torts, Section 402A: "The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods." To say that a dog collar vendor is liable only if he knew of the harmful propensities of the dog to be collared is to go contrary to the basis of the rule and to permit a vendor to escape liability on the basis of lack of knowledge of specific facts ordinarily not known by the vendor. The rule of strict liability makes no such requirement as that imposed by the majority; in fact, the rule was promulgated so as not to permit the vendor to escape liability on the basis of lack of knowledge requisite to sustain his liability in negligence. It is suffi-

cient that the vendor's product was put to a use to which it was intended, in this case, the securing of a dog, and that it failed in that purpose because of a defect therein, and as a result of such failure, without any break in the chain of causation, serious injuries were sustained by the wife-plaintiff.

The majority has intermingled its discussion as to causation with scope of duty and has improperly applied and relied upon rules and restrictions having no applicability to strict product liability under section 402A as adopted and broadened by our Pennsylvania courts.

Therefore, I strongly dissent from the affirmance of the involuntary nonsuit as to the additional defendant Puppy Palace and would remand the case for trial consistent with this opinion.

HOFFMAN and SPAULDING, JJ., join in this dissenting opinion.