# Stewart v. Uniroyal, Inc. (No. 1)

*Thomas Hollander*, Attorney for Stewart.
*John J. Kunz*, Attorney for Big Four Industries.
*Giles Gaca*, Attorney for Gulf Oil.
*Anthony Picadio*, Attorney for Hoffman.
*Thomas M. Weis*, Attorney for Proctor.
*Robert G. Simasek*, Attorney for Seilon, Inc.

LOUIK, *J.*, October 23, 1974—Plaintiff, Richard D. Stewart, made it his customary practice to stop at his friend, Duane S. Proctor's Gulf Station each night after work. Plaintiff was the manager of a service station for trucks located on Route 30 near Irwin, Pa., where he pumped gas and oil and changed truck tires. When plaintiff arrived at the Gulf station on the evening of July 11, 1968, defendant Proctor, his brother, George E. Proctor and Robert C. Sarsfield were working on a truck tire in the garage area. At one point, when defendant Proctor went outside to pump gasoline and Sarsfield was putting a mounted tire on his truck, George E. Proctor called plaintiff into the garage to assist him in seating a second truck tire on its rim. Plaintiff placed the tire and rim on defendant Proctor's tire changing machine and put the locking device or cone down the center post of the machine, as he habitually had done at his place of employment where he had changed over 200 truck tires. Plaintiff unsuccessfully attempted several times to seat the bead as George E. Proctor watched and applied a soap solution to the tire. When the atten-

tions of the two Proctors and Sarsfield were directed to other endeavors, there was an explosion causing the tire and rim assembly to strike plaintiff resulting in severe facial injuries, then to bounce off the ceiling and become imbedded a few inches into the asphalt outside the garage.

The exploding tire was manufactured in June of 1964 by Seilon, Inc., when it was known as Seiberling Rubber Company. Robert C. Sarsfield purchased the tire in a used condition from defendant, Calvin Hoffman, who was engaged in the business of selling used automotive parts and accessories for ten years prior to this sale. Sarsfield, with Hoffman's assistance, selected the tire and another, both mounted on wheels from off a truck located in Hoffman's junk yard. The tires were stored by Sarsfield for two months prior to taking them to defendant Proctor's service station the day of the accident for mounting on the wheels of Sarsfield's truck.

In 1960 or 1961, defendant Big Four Industries, Inc., manufactured the tire changing machine involved herein, which was obtained by defendant Gulf Oil Corporation on October 29, 1964, accompanying the purchase of a gasoline station in Braddock, Pa. The machine remained at that station for use by two successive service station operators, which period ended on November 12, 1965. The second operator, Joseph Zewatsky, testified that the tire changing machine's condition deteriorated with use in his possession. The locking device or cone became worn to the extent that it would not function properly. For safety reasons, Zewatsky disconnected the machine and completely discontinued its use. After Zewatsky went out of business, Gulf placed the machine in storage, after which it

was used at another station. The machine was eventually given by Gulf to defendant Proctor a few months after he went into possession of the Gulf station wherein plaintiff suffered his injuries.

Plaintiff brought this action in trespass seeking to recover damages for those injuries, alleging (1) concurrent negligence by various tire manufacturing companies, the seller of the used tire, the manufacturer of the tire changing machine, the service station owner and the service station operator; (2) strict liability due to the sale of a tire in a defective condition unreasonably dangerous by the tire manufacturer and the used goods seller; and (3) strict liability due to the manufacture and sale of the tire changing machine in a defective condition unreasonably dangerous by Big Four Industries, Inc. Seilon was joined as an additional defendant by defendant used goods seller, alleging sole, joint or several liability of Seilon for negligence or strict liability. In new matter, Seilon incorporated by reference plaintiff's allegations of negligence against original defendants and alleged their sole, joint or several liability.

Pre-trial motions resulted in the case proceeding to trial against Gulf, Proctor, Seilon and Hoffman. The case was submitted to the jury on written interrogatories. The jury in answer to the interrogatories found the following:

"(1) That the tire manufactured by Seilon had an unreasonably dangerous defective condition which was a proximate cause of plaintiff's injuries;

"(2) That the tire changing machine manufactured or sold by Big Four Industries did not have an unreasonably dangerous defective condition;

"(3) That there was negligence on the part of

Gulf which was a proximate cause of plaintiff's injuries;

"(4) That there was negligence on the part of Proctor which was a proximate cause of plaintiff's injuries;

"(5) That plaintiff was not guilty of assumption of risk with respect to the tire;

"(6) That the plaintiff was not guilty of assumption of risk with respect to the tire changing machine;

"(7) That the plaintiff was not guilty of contributory negligence;

"(8) That the damages sustained by the plaintiff amount to $77,500.00."

Pursuant to the answers made by the jury to the written interrogatories, the court molded the verdict as follows:

A verdict in favor of plaintiff against Gulf Oil Corporation, Duane S. Proctor, Seilon, Inc., and Calvin Hoffman in the amount of $77,500 and a verdict in favor of Calvin Hoffman against Seilon, Inc., in the amount of $77,500 and a verdict in favor of Big Four Industries, Inc.

Motions for judgment n.o.v. and new trial are now before the court filed by Gulf Oil Corporation, Duane S. Proctor, Seilon, Inc., and Calvin Hoffman.

Defendant Gulf Oil Corporation contends in its motion for judgment n.o.v. that there is a fatal variance between the pleadings and proof against it. Defendant argues that plaintiff's complaint established that the sole ground for Gulf's liability was vicariously for the negligence of its agent, servant and employe Proctor. Since the court ruled at trial, and so charged the jury, that there was a lessor/ lessee relationship between Gulf and defendant

service station operator Proctor, defendant Gulf argues that the court should have been precluded from submitting the case to the jury for the negligence of defendant as a supplier of the tire changing machine.

Paragraphs 15 and 32 of plaintiff's complaint do draw the parties' attention to the unsafe condition of the tire changing machine and the negligence of Gulf.

"The function of the pleadings is to put the opponent on notice of what he will be called upon to meet at the trial and to define the issues which will be tried." Goodrich-Amram, [Standard Pennsylvania Practice] §1019-1, at p. 103 (1962).

The parties must be sufficiently enabled to meet at trial the allegations averred in the pleadings:

"This rule is based on the sound reason that a defendant should not be taken by surprise at trial by being called upon to defend against matters of which he had no notice in the pleadings, or against a different cause of action. However, there need be only substantial conformity between what is alleged and what is proved: [citation].": Schuylkill Haven Borough v. Botton, 190 Pa. Superior Ct. 157, 161, 153 A. 2d 504 (1959).

Thus, any variance that may be found is immaterial for no prejudice to defendant has resulted therefrom. Though the complaint could very well have been more clearly worded, its vagueness does not seem to have affected defendant in the preparation of its defense. Gulf has been able to actively pursue its defense without the encumbrance of unknown allegations lurking in the background. See Widmer v. Widmer, 176 Pa. Superior Ct. 264, 267, 106 A. 2d 875 (1954).

In light of the lengthy pre-trial activity, the court finds that defendant was neither surprised nor had difficulty in preparing its case. See Incollingo v. Ewing, 444 Pa. 263 at 293, 282 A. 2d 206 (1971); Schuylkill Haven Borough, supra at 161.

"And the modern tendency of the courts is to abolish technical refinements as to variances, with a view toward securing substantial justice.": Domineck v. Tuskay, 201 Pa. Superior Ct. 608, 614, 193 A. 2d 626 (1963).

Accordingly, the mere technicality by which defendant seeks to avoid liability cannot be sustained.

Furthermore, the court suggests that its ruling with respect to the relationship between Gulf and Proctor was more generous to defendant than recent case law and this particular fact situation demand. The relation of gasoline company and service station operator is not strictly one of lessor and lessee for the service station operator "leases" considerably more than land, buildings and equipment. It extends to its "lessee" a franchise with well-established and identifiable products, services and tradename. Gulf did not merely "lease" its service station for its general use, but rather through various other agreements executed concurrently with the lease, it obligated the service station operator to the sale of its products, the use of its credit system and compliance with its operating and maintenance procedures. Gulf, its station operator and the consuming public are fully aware that it is the Gulf brand that is being purchased. The Gulf signs, pumps and building indicate this fact, as well as the unsafe tire changer herein which was adorned with the familiar blue and

orange colors of Gulf Oil Corporation. Moreover, it is the kind of business entailed with the servicing, changing and sale of tires which has become closely related to the image of the Gulf stations.

The parties to the Gulf Oil Corporation "Service Station Lease" are not controlled by their designation as lessor and lessee with regard to tortious injury to third persons: Chevron Oil Company v. Sutton, 85 N.M. 679, 515 P. 2d 1283, 1285 (1973). The trend seems to be moving in the direction of finding the oil companies responsible for the actions of the operator of the service station. See Gizzi v. Texaco, Inc., 437 F. 2d 306 (3d Cir. 1971). Also see comment, Liability of Oil Company for its Lessee's Torts, 1965 U. Ill. L. F. 915, 919-21.

For the reasons stated hereinabove, whatever variance there may be found between the probata et allegata is immaterial. Therefore, the court properly submitted the case against Gulf to the jury on the following theories of liability set forth in Restatement (2d), Torts (1965):

"§388. Chattel Known to be Dangerous for Intended Use. One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

"§392. Chattel Dangerous For Intended Use. One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

"(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

"(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

With respect to §392, it is evident from a perusal of the lease agreement and concurrently executed contractual agreements between Gulf and the service station operator, Proctor, that the latter's tire sales and service enhanced not only his own business, but also furthered the business purposes of Gulf. For example, the expressly mentioned intrinsic value of the gasoline service station will be maintained by furnishing the customary tire service; and the rental of the leased premises, which fluctuates with the gallons of gasoline sold during the month by the service station operator, is affected favorably by the other services provided by the station.

Gulf contends that, since the tire changer was in a patently "worn condition," plaintiff was rendered contributorily negligent as a matter of law. Defendant argues that the danger was obvious and

plaintiff could have refused to work on the tire. Similar arguments have been raised and decided by the Superior Court. In Fullard v. Pittsburgh Urban Redevelopment Authority, 222 Pa. Superior Ct. 184, 293 A. 2d 118 (1972), plaintiff was seriously injured by a piece of steel flying off a chisel which plaintiff admitted was "rusty and ragged." The trial court granted a motion for compulsory nonsuit for defendant supplier of the chattel. The Superior Court vacated the lower court order holding that whether plaintiff knew or should have known that the chattel created such a danger was a matter for the jury to determine under the theory of section 392.

The Fullard Court founded its ruling on Labick v. Vicker, 200 Pa. Superior Ct. 111, 186 A. 2d 874 (1962), which presented a similar situation. In Labick defendant's motions for judgment n.o.v. or for a new trial were based, inter alia, upon the contention that plaintiff was guilty of contributory negligence in using a ladder which plaintiff had complained at the time of use was "too wobbly." The lower court overruled the motions and the Superior Court affirmed despite plaintiff's verbal reservations concerning the ladder, which ultimately broke, causing him to fall and receive injuries.

The Labick defendant's arguments paralleled those propounded by Gulf. Citing Restatement (1st), Torts, §392 (1934), which substantially conforms to Restatement (2d), Torts, §392 (1965), the court answered these arguments at 200 Pa. Superior Ct. 115-17 stating:

"The defendant relies upon statements in §§388 and 389 of the Restatement of Torts to the effect that the supplier of a chattel, ordinarily may be held liable only if the supplier has no reason to believe

that those for whose use the chattel is supplied will realize its dangerous condition, (§388) and the person harmed, is ignorant of the dangerous character of the chattel, (§389). The defendant also cites comment f to §388 and comment d to §389, which indicate that the person using the chattel may disable himself from bringing an action by his contributory negligence in failing to make a proper inspection which would have disclosed the defects.

"However, the defendant's liability here is not based only on §§388 and 389 of the Restatement of Torts, which determine the liability of those who supply chattels to others for any purpose. Under those sections the liability of the supplier arises only if he supplies a chattel which he knows or has reason to know is or is likely to be unsafe, and he has no duty to inspect it or make it safe for use. Since the chattel in this case was to be used for the supplier's business purposes, §392 of the Restatement also is applicable.

"As stated in comment [a] to the section: '. . . Section 392 states the rule under which a peculiar liability is imposed upon one supplying chattels for another's use because of the fact that the use is one in which the supplier has a business interest. A person so supplying goods is required not only to give warning of dangers which he knows are involved in the use of the article, or which, from facts within his knowledge, he knows are likely to be so involved, but also to subject the article to such an inspection as the danger of using it in a dangerous condition makes it reasonable to require of him . . .'

"Under §392 of the Restatement the defendant was under a duty to exercise reasonable care to make the ladder safe for the plaintiff's use. This duty included an obligation to subject the ladder to

such an inspection as the danger of using it in a defective condition reasonably required. Under these circumstances we cannot hold the plaintiff guilty of contributory negligence as a matter of law for relying upon the defendant's assurances that he had performed his duty and that the ladder, despite its appearance, had been tested and was sufficiently strong, instead of making his own tests or inspection to determine its strength. Sperling v. Morgold Garage Corporation, 274 App. Div. 755, 79 N.Y.S. 2d 574 (1948).

"It is significant that there is nothing in the comments to §392 relating to contributory negligence by reason of the plaintiff's failure to make an inspection in contrast to the duty of inspection placed upon the supplier by the black-letter of §392(b). No statement regarding contributory negligence for failure to inspect or take precautions such as that relied upon by the defendant and found in comment f to §388 and comment d to §389, above referred to, is found in §392 or the comments to that section. Comment b to the companion §393, which discusses contributory negligence when the person injured knows of the defect, gives no suggestion that the user who does not know of the defect has any duty to inspect or take precautions with regard to a chattel furnished to him for the supplier's business purposes."

In Fullard, reference to any assurances to the injured user on behalf of defendant supplier of the dangerous chattel was absent. Also, in the case herein, it was the defendant Gulf who, after the charge to the jury (which included a reading of section 392), requested at sidebar the reading of §388. Following the reasoning of Labick and Fullard, this court is compelled to overrule this particu-

lar ground of Gulf's motions for judgment n.o.v. and new trial on this issue, for the above rationale is equally applicable to it.

Gulf further contends that, though it supplied a worn tire changing machine, any possible negligence on its part was not the proximate cause of plaintiff's injuries. Since defendants have brought these motions for judgment n.o.v. and for new trial, the court must view the evidence in the light most favorable to the verdict winner. Any evidence which supports plaintiff's verdict will be considered while the rest must be rejected. And, any conflicts in the testimony will be resolved in plaintiff's favor: Glass v. Freeman, 430 Pa. 21, 25, 240 A. 2d 825 (1968). Since Gulf focuses solely on the worn condition of the tire changing machine, this court, applying the above-stated rule, notes that the jury could reasonably have found Gulf negligent on any one or a combination of the following factual grounds: Gulf owned the service station premises and the air compressor and air line thereon, which line was not equipped with a gauge to control air pressure; Gulf supplied no information, instructions or training relating to the servicing and handling of tires, rims and equipment; the tire changing machine was in a worn state, improperly repaired and missing some parts; Gulf neither performed repairs nor had service records concerning the machine; Gulf did not inspect the machine prior to supplying it; and Gulf gave no warning of the dangerous condition of the machine.

Though not raising the issue of proximate cause, defendant service station operator does question whether there was sufficient evidence from which the jury could reasonably find negligence on his

part. Taking the evidence as it most favorably reflects plaintiff's position, the jury could reasonably have found the service station operator negligent on any one or the combination of the following grounds: the service station operator received the tire changing machine from Gulf in the condition described above; he did not service or repair the machine; though designed to be bolted to the floor and the service station floor had seven holes available for such purpose, defendant did not so bolt it down, requiring the machine to be held to prevent movement during use; the cone was badly worn and was permitted to be used though such condition was known to defendant; defendant had no instructions for the machine's operation nor information for tire inflation or mounting and made no effort to obtain such information; neither an air gauge nor control for limiting the maximum amount of air was attached to the air hose; defendant had no automatic inflator available for use with the machine; and in spite of his conviction that the tire and rim should have been disassembled at the time of the accident, he did not communicate his feelings to his brother and plaintiff when defendant left the wheel on the changer table to pump gasoline outside.

In support of its argument that either the service station operator's negligence or the defective condition of the tire independently caused plaintiff's injuries, Gulf extensively quotes from Whitner v. Lojeski, 437 Pa. 448, 263 A. 2d 889 (1970), and Klena v. Rutkowski, 432 Pa. 509, 248 A. 2d 9 (1968), two leading cases on the question of causation. Beginning with the "but for" issue, Gulf argues that this grievous accident would have

occurred despite the worn condition of the tire changer: whether the machine was worn or new, it would not have prevented the tire and rim assembly from striking plaintiff. However, evidence of (1) the use of the cone or lock-down device, (2) the cone's capacity to restrain the tire and rim and (3) the above-mentioned factors upon which the jury reasonably could have based its verdict demonstrate the unpersuasiveness of Gulf's "but for" argument. There was sufficient evidence for the jury to find Gulf's negligence the causa sine qua non of the resultant harm. See Whitner, supra, at 456-57.

With respect to the final element of plaintiff's prima facie case of negligence, the Whitner court indicated at pages 457-58 that the concept of proximate cause is synonymous with the Restatement (2d's) definition of legal cause:

"§431. What Constitutes Legal Cause
"The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

The Restatement (2d's) formulation of the "but for" test (§432(1)), and concurrent cause (§432(2)), issue provides:

"§432. Negligent Conduct as Necessary Antecedent of Harm

"(1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.

"(2)  If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about."

And, the Restatement's expression with respect to intervening and superseding cause follows:

"§447. Negligence of Intervening Acts

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a)  the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b)  a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

The jury was charged on the issues of concurring and superseding cause; and they found the defective condition of the tire, Gulf's negligence and the service station operator's negligence to be the proximate causes of plaintiff's injuries. The question of proximate cause is almost always one of fact for the jury: Anderson v. Bushong Pontiac Co., 404 Pa. 382, 391, 171 A. 2d. 771 (1961). This court cannot say as a matter of law that the intervening actions of defendant service station operator were a superseding cause because §447 "presents fact questions

of its own force.": Flickinger Estate v. Ritsky, 452 Pa. 69, 75, 305 A. 2d 40 (1973). The service station operator's negligence was neither unforeseeable nor highly extraordinary. See Shimer v. Bangnor Gas Co., 410 Pa. 92, 96-97, 188 A. 2d 734 (1963); Foley v. The Pittsburgh-Des Moines Co., 363 Pa. 1, 26-28, 68 A. 2d 517 (1949). Moreover, the simultaneously operating danger-producing defective tire does not require this court to hold that Gulf's negligence was not a substantial factor in bringing about the accident: Restatement (2d), Torts, §432(2), and comment d (1965). Remembering that the Restatement's rules of causal relation are applicable to both negligence and strict liability (Oehler v. Davis, 223 Pa. Superior Ct. 333, 337, 298 A. 2d 895 (citing Restatement (2d), Torts, §430, comment e (1965)), "The fact that the active and simultaneous operation of the effects of a third person's [defective tire] . . . tortious . . . act is also a substantial factor in bringing about the harm does not protect the actor [Gulf] from liability" for its actively and continuously operating negligence: Restatement (2d), Torts, §439 (1965).

Likewise, the tire manufacturer, Seilon, Inc., cannot argue that the dangerously defective condition of the tire was not the proximate cause of plaintiff's harm because of the intervening negligence of the service station operator. The latter's negligent conduct was entirely foreseeable by the tire manufacturer: Forry v. Gulf Oil Corp., 428 Pa. 334, 345, 237 A. 2d 593 (1968).

Seilon asserts in its motion for judgment n.o.v., that, as a matter of law, plaintiff assumed the risk of the dangers surrounding the inflation of this tire. Though the evidence suggests that plaintiff knew of the dangers involved in the inflation of a normal

tire with normal equipment, his handling of the tire and tire changing machine does not require this court to find that he necessarily voluntarily and unreasonably used these products with knowledge and full understanding of their unreasonably dangerous defective condition: Ferraro v. Ford Motor Co., 423 Pa. 324, 327-28, 223 A. 2d 746 (1966); Restatement (2d), Torts, §402A, comment n, and §496C (1965). There was no evidence whatsoever that plaintiff had discovered the defective condition of the tire prior to his attempts to seat the bead: Burbage v. Boiler Eng. & Supp. Co., Inc., 433 Pa. 319, 325-26, 249 A. 2d 563 (1969). On the evidence produced, it is for the jury to say whether plaintiff voluntarily assumed the risk of danger from defendant's tire. See, e.g., Henrich v. Cutler Hammer Co., 460 F. 2d 1325 (3d Cir., 1972).

Seilon also contends that the testimony of plaintiff's expert, Dr. Emerson Venable, demonstrated the insufficiency of plaintiff's evidentiary support for the conclusion that the tire was in a defective condition. Taking the evidence in the light most favorable to plaintiff, this court finds that there was sufficient evidence upon which the jury could determine that the tire was defectively manufactured: the tire exploded; following the explosion of the tire, the bead was bent out of form in an "S" shape and was broken; a tire with a normal, sound bead would fail in the casing from over-inflation, not at the bead; the bead on the tire overlapped two to two and one-half inches, though it should normally overlap six or more inches; the top wrap of the bead was separated from the remaining wires; the adhesion of the rubber to the wire in the bead failed; the bead as so construed would fail under less pressure as a result of its reduced strength; the

tire's failure was due to the inadequate overlap and adhesion which defects were existing at the time of manufacture. In this fact situation, reasonable and well-balanced minds could be satisfied that a defective condition existed when the tire left the hands of the manufacturer: Greco v. Bucciconi Eng. Co., 407 F. 2d 87, 90 (3d Cir., 1969).

In its motion for new trial, Seilon focuses on the jury charge, contending that it was prejudiced by (1) the charge on malfunction; (2) the reference to §388; and (3) the direction of the jury's attention to the strict liability portion of the charge.

At the heart of the problem, with respect to the defendant's argument on the malfunction issue, is the truncated version of the charge which defendant quotes in its brief. In full, the court stated:

"On the strict liability theory of the law we are not concerned whether it was negligence on the part of the defendant in manufacturing their product. If they manufactured a defective product they would be liable even though they exercised the high degree of care. Our concern, or your concern here is with the fitness of the product and not the conduct of the manufacturer as measured by the care; therefore, if a malfunction occurred it is up to you to decide if one did occur, then you *may* consider the evidence of malfunction as circumstantial evidence of the unfitness of the equipment, *provided that reasonable secondary causes are excluded as the cause of the malfunction.*" (emphasis supplied).

The italicized portions emphasize the jury's discretion and judgment in this matter and underscore the absence of prejudice to defendant. Furthermore, the charge was in substantial conformity

with the MacDougall principle: proof of a specific defect is not essential to a prima facie case under §402A; the occurrence of a malfunction, in the absence of abnormal use and reasonable secondary causes, is evidence of a defective condition: MacDougall v. Ford Motor Co., 214 Pa. Superior Ct. 384, 388-89, 391, 257 A. 2d 676 (1969) (recently approved in Berkebile v. Brantly Helicopter Corp., 225 Pa. Superior Ct. 349, 353, 311 A. 2d 140 (1973) aff'd, 462 Pa. 95, 337 A. 2d 893 (1975) and D'Antona v. Hampton Grinding Wheel Co., 225 Pa. Superior Ct. 120, 123, n. 4, 310 A. 2d 307 (1973)).

The essence of such a dispute with the application of the MacDougall principle to this fact situation is that a used product with an uncertain history has been substantially changed. However, implicit in the jury's verdict against both Seilon and the used goods seller is the finding that the relevant portion of this tire remained unimpaired between the time of manufacture and sale by Seilon to the time of the accident. As shown above, there was sufficient evidence to support the jury's finding of a defective condition at the time of sale by Seilon. For this reason, this court may not set aside the jury's findings of fact: Burbage v. Boiler Eng. & Supp. Co., Inc., 433 Pa. 319, 323-24, 249 A. 2d 563 (1969).

With respect to the Seilon's contention that it was harmed by the reading of §388 after discussion at sidebar at the close of the jury charge, this court fails to comprehend defendant's rationale. Since it is generally acknowledged that proof of a breach of defendant's standard of care in the typical negligence case is considerably more difficult than the proof required in an action under strict liability, this charge on negligence was harmless. The jury returned a verdict against defendant for the man-

ufacture and sale of the tire in a defective condition unreasonably dangerous.

Finally, Seilon argues that the court overemphasized the strict liability portion of the charge to its prejudice by stating immediately prior to the reading of §402A: "please listen to this carefully because we get into a very important aspect of this case now." It is fundamental that, in determining whether a party has been prejudiced by a portion of a jury charge, the challenged passage must not be taken out of context but rather the charge must be reviewed in its entirety: Whitner, supra (at p. 454). The introductory phrase not only is accurate, but it does not draw any particular attention to the theory of Seilon's liability as opposed to another. Each theory was fully discussed and the jury was advised to consider the entire charge in its deliberations. The jury was cautioned that it could not imply from any part of the charge that its verdict must be for either party; that the trial judge is utterly neutral; and that it was the jury's function to decide the facts. Therefore, this court overrules defendant's motion for new trial since it made no showing of any harm at trial.

Defendant Calvin Hoffman, in his motions for new trial and judgment n.o.v., argues that the doctrine of strict liability in tort is inapplicable to him. With respect to a seller of used products, the Restatement (2d), Torts, §402A (1965), imposes liability on a seller who is "engaged in the business of selling" "any product." Defendant argues correctly that the use of the words "any product" was intended by the drafters to insure that strict liability in tort would not be limited to the kinds of products to which the courts had traditionally taken a decisional or statutory breach of warranty approach.

Speidel, "The Virginia 'Anti-Privity' Statute: Strict Products Liability under the Uniform Commercial Code," 51 Va. L. Rev. 804, 813 n. 20 (1965). Prior to the adoption of §402A in Webb v. Zern, 422 Pa. 424, 220 A. 2d 853 (1966), or the enactment of the Uniform Commercial Code warranties with their liberally extended protection in Kassab v. Central Soya, 432 Pa. 217, 246 A. 2d 848 (1968), and Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A. 2d 903 (1974), the Pennsylvania courts had dispensed with the requirements of seller's negligence and privity of contract only in cases of foodstuffs, like goods for human consumption or goods associated with intimate body use: Miller v. Preitz, 422 Pa. 383, 405, 221 A. 2d 320 (1966). However, as comment b to §402A states, beginning with the extension of the warranty approach to cinder blocks in Spence v. Three Rivers Builders and Masonry Supply, Inc., 353 Mich. 120, 90 N.W. 2d 873 (1958), the limitation to products intimately associated with the body was discarded. The rule of strict liability in tort has been extended "to cover the sale of any product which, if it should prove to be defective, may be expected to cause physical harm to the consumer or his property." Restatement (2d), Torts, §402A, comment b.

The plain fact is that the drafters of §402A and its comments dealt with neither the new nor the used aspects of "any product." Thus, an examination of the cases cited by the drafters to support the adoption of §402A or the law review articles and treatises cited by defendant, which merely report the past status of the law, will not bring a satisfactory resolution to this issue unless they were to indicate a trend in the law of products liability. "The development of the liability of manufacturers and

other suppliers has often been described as the very model of the growth of a common law institution.": Ehrenzweig, "Products Liability in the Conflict of Laws—Toward a Theory of Enterprise Liability Under Foreseeable and Insurable Laws: II," 69 Yale L.J. 794 (1960).

To determine whether §402A applies to this situation, the court must focus on both the seller and his product. Comment f to §402A, applied in Forry, supra, at 340, states that the use of strict liability in tort "applies to any person engaged in the business of selling products for use and consumption." The comment draws an analogy to the merchant seller in section 2-314 of the Uniform Commercial Code of April 6, 1953, P.L. 3, reenacted October 2, 1959, P.L. 1023, 12A PS §2-314, who impliedly warrants the merchantability of the goods he sells.

This analogy is strongly supported by the Kassab court's declaration that the code and §402A are coextensive on the issue of who can be sued for a breach of implied warranty: Kassab, supra (at pp. 231-32). Hence the seller must be one who regularly "deals in goods of the kind" sold herein, 12A PS §2-104, and must not be one who is "making an isolated sale of goods.": 12A PS §2-314, comment 3. The circumstance of defendant Hoffman's meager sales does not make him such an occasional seller. Nor does the sale of varied automobile and truck parts and accessories derogate from his essentially merchant character. "It is not necessary that the seller be engaged solely in the business of selling such products.": §402A, comment f. For defendant Hoffman, it is sufficient for purposes of his merchant-seller status that he carried on an established and well-recognized kind of business which has been a regularly maintained activity on his part.

This does not mean, in a used goods case, that by reason of any defect, the consumer may bring an action for breach of implied warranty of merchantability or its theoretical equivalent in terms of proof of defect in strict liability in tort: Rapson, "Products Liability in Tort," 2 U.C.C. L.J. 315, 319-20 (1970). "A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description.": 12A PS §2-314, comment 3. Defendant Hoffman impliedly assured (Kassab, supra, at 230, n. 6), that the tires he was selling were reasonably safe for their intended use. Though the tire was not intended to be used for the length of time one would expect from an identical but unused tire, the law imposes an affirmative obligation upon the seller to sell goods which are not "in a defective condition unreasonably dangerous" to the consumer. See L. Frumer & M. Friedman, Products Liability, §16A[4] [b] [iv], 3-283 and §19.03[5], 5-128 to 5-131 (1974) (breach of warranty cases involving used goods).

The following cases are indicative of a recent trend to protect the injured consumer from injuries sustained as a result of a defective part of a used automobile or truck: used truck dealer held accountable under section 402A for a defective rim of a wheel assembly (Mixter v. Mack Trucks, Inc., 224 Pa. Superior Ct. 313, 308 A. 2d 139 (1973) aff'g No. 1279 January term, 1969, C. P. Allegheny County, per Silvestri, *J.*); §402A held applicable to a used car dealer for a defective radiator hose (Stone v. Kuhn, 46 D. & C. 2d 638, 641 (C.P. Perry County, 1969) (defendant prevailed on other grounds); and a used-car dealer held liable under section 402A for damages caused by brake failure (Lewis v. E. F. Moore, Inc., 42 D. & C. 2d 614, 617 (C. P. Montg. County, 1967)). These cases from

three different counties evidence a judicial desire to hold sellers strictly liable for defective parts of a used vehicle. See Flavin v. Aldrich, 213 Pa. Superior Ct. 420, 426-27 n. 1, 250 A. 2d 185 (1968).

To say that the consumer will not recover when the defective component itself is purchased separately is a non sequitur. The Pennsylvania Supreme Court has recognized "the consumer's inability to protect himself adequately from defectively manufactured goods" (Kassab, supra, at 230 n. 6) and has consequently declared that "the public interest in the protection of human life justifies the imposition upon consumer products suppliers of full responsibility for harm resulting from use of the products." Salvador, supra, at 908 n. 15. Especially in the case where plaintiff was not privy to the sale of the defective product, and consequently would consider irrelevant the happenstance that he was injured by a product which was purchased used, to refuse to impose such an obligation on the manufacturer would do a serious injustice to plaintiff.

Again, reference to the warranty sections of the Uniform Commercial Code suggest legislative intent to make the seller "a guarantor of his products' safety" as the Pennsylvania Supreme Court has indicated in Salvador, supra (at p. 907). Section 2-719(3) makes any limitation of consequential damages for personal injuries prima facie unconscionable, while §2-316(3)(b) and comment 8 thereto prevent the implied warranty of fitness for ordinary purposes from being excluded, modified or disclaimed under these circumstances. Therefore, this court will not do that which defendant Hoffman could not and did not do to protect himself.

Between plaintiff/consumer and defendant/seller, the Pennsylvania Supreme Court has placed responsibility on the "better risk bearer [who] can spread the cost of accidents resulting from his product through its price and liability insurance.": Bialek v. Pittsburgh Brewing Co., 430 Pa. 176, 187, 242 A. 2d 231 (1968) (relying on §402A and comments c and f). Plaintiff need only prove that the seller sold a product which, at the time of the sale, was in a defective condition: Kassab, supra (at p. 230 n. 6); Bialek, supra (at p. 187); Forry, supra (at p. 340). The jury found that the tire manufactured by Seilon had an unreasonably dangerous, defective condition which was a proximate cause of the injuries sustained by plaintiff.

The court will, therefore, dismiss all the motions for judgment n.o.v. and new trial filed by Gulf Oil Corporation, Duane S. Proctor, Seilon, Inc., and Calvin Hoffman.

It was stipulated by all counsel that the question of contribution and indemnification among the parties should be decided by the court on the record in this case following the verdict. There has also been presented to the court a petition by Calvin Hoffman for an award of counsel fees against Seilon. Pursuant to Pa. R.C.P. 213(b), the court will hold a hearing to give an opportunity to all counsel to present views on the issue of contribution, indemnification and counsel fees.

## ORDER

And now, October 23, 1974, upon consideration of the record, the briefs filed by all counsel and arguments made by all counsel, it is hereby ordered, adjudged and decreed that the motions for

judgment n.o.v. and for new trial made by Gulf Oil Corporation, Duane S. Proctor, Seilon, Inc. and Calvin Hoffman be and the same are hereby dismissed.